No. 25,734.

MARIE LOUISE BRYANT, *Appellee*, v. ALEXANDER BARTELLI, as Executor, etc., for DANIEL HARTLEY, Deceased, et al., *Appellants*.

SYLLABUS BY THE COURT.

GIFTS—*Evidence—Weight and Sufficiency*. The rule requiring a gift to be proved by clear and convincing evidence is a rule to be applied by the trial court, and this court on appeal will not set aside a finding of gift sustained by substantial competent evidence because the record discloses evidence warranting a contrary finding.

Appeal from Wyandotte district court, division No. 3; WILLAM H. Mc-CAMISH, judge. Opinion filed March 7, 1925. Affirmed.

*James L. Hogin, Roy R. Hubbard,* both of Kansas City, and *C. L. Hogin,* of Kansas City, Mo., for the appellants.

*J. O. Emerson,* and *David J. Smith,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to quiet title to real estate against a mortgage given by plaintiff and her husband, George Daniel Bryant, to Daniel Hartley. The claim was that the purchase price of the real estate was a gift from Hartley to plaintiff and her husband, from whom she has been divorced, and that the mortgage was given as a check on Bryant's improvidence, and without consideration. Hartley is dead, and his executor answered, praying for foreclosure of the mortgage. Plaintiff recovered, and the executor and other defendants appeal.

Previous to the year 1918, Hartley lived in Kansas City. In February of that year he gave up his residence in Kansas City and went to Denver, Colo., where he lived with a daughter, Mrs. Harmon, until his death, which occurred in June, 1922. He was about eighty years of age at the time of his death, and his heirs were Mrs. Harmon; another daughter, Mrs. Whitaker; and his grandson,

George Daniel Bryant, who was the son of a deceased daughter. Hartley left a will, executed at Denver in July, 1920, in which he recited advancement to Mrs. Harmon of $1,143, to Mrs. Whitaker of $1,050, and to George Daniel Bryant of $910, to be deducted from bequests given them in the will.

At her father's request, Mrs. Harmon went to Kansas City to assist him in settling his affairs preparatory to removing to Denver. Plaintiff's father, Zeno L. Easom, assisted Hartley in closing up his business and accompanied him when he went to Denver. Hartley told Easom in Kansas City that he was growing old, that he wanted to give all of his heirs something before he died, and that the time to do it was before he went to Denver to live. In execution of this purpose, an advancement to Mrs. Whitaker was arranged in part at least, at the office of Reed & Reed, in Kansas, City, Mo. Hartley, Mrs. Harmon and Easom were present. Easom testified that while at the office of Reed & Reed, Hartley told Reed & Reed he was going to Denver, and wanted to give something to all of his heirs. Mrs. Harmon, who was a witness adverse to plaintiff, did not dispute the fact that this conversation occurred. She testified that her father told her he was going to give the same to each, that her father had advanced to her as much as $1,143, the sum stated in the will as having been advanced to her, and that she knew her father gave Mrs. Whitaker about the same amount he gave the others. The only other heir was plaintiff's husband, George Daniel Bryant.

Bryant held a contract of purchase for the lots in controversy, on which he lived. On February 19, 1918, Hartley, Mrs. Harmon and Easom went to a bank in Kansas City, from which Hartley drew $200. He gave the money to Easom, and directed Easom to go to Independence and pay his tithes—a gift to the church. One hundred dollars of the money was a gift to his great grandson, the infant child of the plaintiff, and George Daniel Bryant. From this bank Hartley, Mrs. Harmon and Easom went to the Peoples Bank, where Hartley transacted some business with Mrs. Harmon. Easom testified that in the course of the transaction Mrs. Harmon said, "Pa, don't forget George," and Hartley said, "I am not going to forget George." Hartley then instructed Easom to go to the office of Merriam, Ellis & Benton, who held the contract, and ascertain the amount necessary to pay it up. Hartley and Mrs. Harmon waited at the bank. Easom did as directed, ascertained the amount was $795, and reported to Hartley and Mrs. Harmon at the bank. Hart-

ley then drew from the bank $795, gave it to Easom, and told Easom to pay the amount due on the contract. Easom executed this commission, and received a deed to the lots to George Daniel Bryant and his wife, Marie Louise Bryant, Hartley having specified the deed should be made in that way, because he was giving the property as much to George's wife as to George. At the same time the note and mortgage in controversy were prepared for execution. The note was for $795, payable five years after date, with interest at the rate of six per cent per annum, and the mortgage covered the property described in the deed. Hartley said he wanted the mortgage in order to keep George from selling the place and squandering the money; he did not want George and his wife to be without a home. Easom gave the instruments to a notary, who that night procured the signatures and took the acknowledgments of George and his wife. Before the note and mortgage were presented to plaintiff for execution, her father explained to her that Hartley had paid off the balance due on the home, and was taking the mortgage so she and her husband could not sell it. A day or two later, while at the Easom home, Hartley told Mrs. Easom that he had fixed it so that Marie and the baby would always have a home, that the mortgage had been taken so George "couldn't go through with it," and that the money paid for the property was to come out of George's inheritance.

As indicated above, Mrs. Bryant was granted a divorce from her husband, and the decree awarded the lots to her. After plaintiff obtained the divorce, Hartley wrote her a letter demanding interest on the mortgage, although according to the terms of the note and mortgage no interest was due. This led to some correspondence, in which Hartley exhibited extreme partisanship for his grandson. In a letter to plaintiff's attorneys dated April 1, 1920, he said:

"As the court has taken this property away from my grandson, it is up to Mrs. Bryant to see that the debts are paid. . . . Mrs. Bryant is no longer the wife of my grandson. She has given up all claim on him, so she has nothing to do with what I give my grandson. I am sorry to say that Mrs. Bryant and her people have had no pity on my grandson. They have obtained possession of all that belonged to him, and robbed him of his babies through falsehoods in court. So it is up to me to look after what little is left for him and his sons."

The foregoing evidence was amply sufficient to warrant the court in finding that Hartley made a gift to his grandson, as prospective heir, of the money which procured the deed to George and Marie Bryant, and that the note and mortgage were given without consid-

eration. Evidence was introduced by defendants indicating that no gift was intended, and that Hartley expected the money which he advanced to be repaid with interest. Defendants say plaintiff failed to prove her case by testimony of the character and cogency necessary to establish a gift *inter vivos,* and that to determine the question this court must examine and consider all the evidence. Defendants say further that a vital principle of law is involved. With the latter statement the court agrees. However, the principle which the court has in mind is that the rule requiring a gift to be proved by clear and convincing evidence is a rule to be applied by the trial court, just as the rule in criminal cases that guilt must be proved beyond a reasonable doubt is a rule to be applied in the trial court; and this court will not on appeal set aside a finding of gift or guilt sustained by substantial competent evidence, because the record discloses evidence warranting a contrary finding. The principle was applied in the case of *Klein v. Blackshere,* 113 Kan. 539, 215 Pac. 315, which involved an oral gift of land.

The judgment of the district court is affirmed.