No. 32,987

G. H. COLLINGWOOD, *Appellant,* v. TOM PALMER, *Appellee.*

(62 P. 2d 910)

Opinion filed December 12, 1936.

*George B. Collins, Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs* and *Robert H. Nelson,* all of Wichita, for the appellant.

*W. E. Holmes, Mark H. Adams, Howard L. Baker* and *Charles E. Jones,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action to recover a transfer of one-eighth interest in an oil and gas leasehold estate, and for an accounting as to the sum found due the plaintiff from the defendant growing out of the income from such leasehold estate.

There is no dispute as to the plaintiff's having entered into a tentative agreement with the Phillips Petroleum Company as to a sublease for gas on a quarter section of land in Reno county in 1931, on which the company held a lease for both oil and gas, and there-

after this tentative agreement was changed at the request of both plaintiff and defendant to be a sublease as to both oil and gas, but limited to one half of such quarter section or the west eighty acres thereof, and this agreement was reduced to .a written contract wherein the petroleum company promised to give one half of the leasehold interest held by the petroleum company in said eighty-acre tract to the defendant in this case by consent of the plaintiff for defendant's agreement to drill one well thereon free to the petroleum company. The agreement or contract between the plaintiff and defendant as to their respective interests in this well or estate was made orally by them between the times of making these two tentative agreements with the petroleum company. The allegations of the plaintiff as to such agreement between plaintiff and defendant are as follows:

"That after making said original tentative agreement with said Phillips Petroleum Company, plaintiff approached the defendant and explained the matter to him, and thereupon the plaintiff and defendant entered into an oral agreement in substantially the following terms:

"The plaintiff and defendant were to consummate the tentative agreement already had between the plaintiff and the Phillips Petroleum Company; the defendant was to drill or cause to be drilled on said leasehold estate a well for oil and gas for the joint benefit of plaintiff and defendant; that if said well was a commercial producer the defendant was to be repaid any advances and expenses to which he had been put in connection with the drilling of said well, and thereafter the defendant was formally to transfer one half of the interest left in said leasehold estate standing in defendant's name to this plaintiff; that after the repayment of the expenses and advances of the defendant or anyone on his behalf for the drilling of said well the plaintiff and defendant were to share equally in the proceeds from said leasehold estate; that thereafter the parties were to bear their proportionate share of development and operation expense."

The answer and cross petition of defendant consist practically of a general denial and several special denials except that it admits that defendant owns an undivided one-fourth interest in the lease covering the eighty-acre tract, and that plaintiff has demanded of him an undivided one-half interest in his undivided one-fourth interest in the leasehold estate and an accounting in respect thereto. At the time of the trial it was agreed that the accounting feature of the case be postponed and that the trial proceed only "as to the quantity of interest, if any, which the plaintiff might have in the premises."

The history of the transactions leading up to the drilling of the

well and the interests held in the leasehold estate by every one connected with the affair, except the plaintiff, was covered by stipulation, including the assignment by the defendant of a part of his interest therein to Manning and Terry for assisting him in drilling the test well on the premises, so that the stipulation showed the following to be the holding of the several parties, except the plaintiff, at the time of the trial:

"Phillips Petroleum Company—an undivided one-half interest.

"Manning & Terry, Inc., an undivided one-fourth interest.

"Tom Palmer, an undivided one-fourth interest."

In addition to the stipulation the only evidence offered on the trial was the testimony of the plaintiff and defendant and the depositions of two officers of the Phillips Petroleum Company, the depositions showing the making of the earlier tentative agreement with the plaintiff and the later tentative agreement with both plaintiff and defendant, and by agreement of both plaintiff and defendant the written contract was made by the petroleum company with the defendant.

After hearing the evidence the trial court made findings of fact and conclusions of law. The first finding accepted everything contained in the stipulation as facts. The second finding was concerning the existence in March, 1931, of a producing gas well off-setting the oil and gas lease here involved.` The remaining findings of fact are as follows:

"3. That in March, 1931, plaintiff orally informed defendant that an agreement might be procured with Phillips Petroleum Company, the owner of said oil and gas lease, for the drilling of the same for an interest therein; that defendant told plaintiff that if such agreement could be made that he would take the deal and give plaintiff one eighth of whatever profit he, defendant, might make as a result thereof, the defendant to stand all expense and loss, if any, as a result of said transaction, and defendant to have exclusive right of control and operation of any interest in said leasehold procured from Phillips Petroleum Company.

"4. That plaintiff and defendant made two trips to Bartlesville, Okla., thereafter and discussed with the officers of the Phillips Petroleum Company the securing of an agreement in accordance with the proposal; that subsequently, and on April 14, 1931, contract was entered into between Phillips Petroleum Company and the defendant herein, in accordance with the facts hereinbefore stipulated, all in respect to said oil and gas lease.

"5. That all arrangements, contracts, expenditures, and obligations in respect to the drilling of a test well for oil and gas upon said leasehold estate were performed, paid and assumed by defendant without the knowledge, assistance or obligation of the plaintiff; that defendant and Manning & Terry, Inc., with whom defendant contracted for the drilling of the well thereon, paid for the

drilling and equipping of said test well, defendant's portion being approximately $17,000; that at no time did defendant request or demand from plaintiff any contribution of services or money in respect to the development or equipping of said leasehold estate for the production of oil or gas; that at no time did plaintiff tender or pay any portion of the moneys by defendant paid in respect to the development or operation of said leasehold estate; that plaintiff at no time rendered any service of any nature or kind in respect to the development or operation of said leasehold estate, with the exception that plaintiff, with defendant, stepped off the location of the well drilled on said leasehold.

"6. That at all times since the completion of. the small producing well upon said leasehold estate, defendant has been in complete charge of the occupation, management and control thereof; that if a loss resulted from such transaction, the entire loss in respect thereto, suffered by defendant, would have been his alone, no part of which would have been the loss of the plaintiff; that the plaintiff, at no time until in March, 1934, claimed of defendant any interest in the interest of the defendant in said oil and gas lease, the equipment thereon, or the proceeds therefrom; that at that time the defendant caused, through his bookkeeper, to be furnished to plaintiff a statement of the expenses and income in respect to said leasehold estate and a statement of the one eighth of defendant's profit in respect thereto; that thereafter this suit was filed.

"7. That defendant has, at all times, been ready and willing to account to the plaintiff for an undivided one eighth of defendant's profit in respect to defendant's interest in said oil and gas leasehold estate.

"8. That the plaintiff is entitled to an accounting for an undivided one eighth of the defendant's profits from the operation of the lease in question."

The conclusions of law made by the trial court are as follows:

"1. The agreement between the parties being oral, the plaintiff has not established, by a preponderance of the evidence, that his contention as to the oral agreement was the correct one.

"2. Plaintiff is entitled, as commission, to an undivided one eighth of defendant's profits, if any, which may result to defendant from his interest in the oil and gas lease in question, for which plaintiff is entitled to an accounting.

"3. That the costs herein be taxed to the plaintiff."

The serious difference between the plaintiff and defendant in this case is as to the proportion of interest or profit of the defendant to which the plaintiff is entitled. The plaintiff in his petition and in his evidence has claimed one half of the defendant's interest or profit, while the defendant contended he is only entitled to one eighth thereof. The defendant, in his testimony and in the account rendered the plaintiff at plaintiff's request, in 1934, admitted plaintiff was entitled to one eighth of defendant's profit, the account showing the expense of drilling the test well had all been paid, leaving at that time a net income of more than $1,400.

After the overruling of the motion for a new trial it was ordered and adjudged that the defendant is the legal and equitable owner of an undivided one-fourth (¼) interest in and to the oil and gas lease on the eighty-acre tract (describing it) and "that the title of the said defendant to said undivided interest in said oil and gas lease, insofar as it covers the real property herein above described, should be, and the same is hereby quieted against G. H. Collingwood, his heirs, executors, administrators and assigns, and the said G. H. Collingwood, his heirs, executors, administrators and assigns are forever barred from asserting or claiming any interest, right, title, lien or estate in or to said above described undivided interest of the said defendant in and to said oil and gas lease, insofar as it covers the above described land."

"It is further ordered, adjudged and decreed that defendant account to, and pay to plaintiff, on or before February 1, 1936, an undivided one eighth of defendant's profits, if any, which may have accrued to defendant from his interest in the aforementioned oil and gas lease, as of December 31, 1935, and thereafter on the 20th day of each month, account to and pay to said plaintiff an undivided one eighth of said defendant's profits, if any, accruing to the defendant from his said interest in said oil and gas lease for the preceding month."

From this judgment the plaintiff appealed, assigning several specifications of error, and suggesting in his brief the consideration of the following questions involved:

"1. Whether or not there was a joint enterprise.

"2. Whether the interest of the plaintiff was that of one half of the remainder after the defendant disposed of other interests or one eighth of such remainder.

"3. Whether such interest was due plaintiff as commission or by virtue of a joint adventure.

"4. Whether in the absence of proof by either party as to the extent of the interest which plaintiff was to take plaintiff was entitled to a one-half interest under the presumption of law that where there is no express agreement the parties are to share equally.

"5. Whether the court erred in placing the burden of proof on the plaintiff to establish by a preponderance of the evidence that he was entitled to a one-half interest.

"6. Whether instead the burden of proof was not upon the defendant to prove that the division of interest was different from the presumption of law that the parties shared equally."

Counsel for appellant very learnedly and instructively discuss the legal questions as to joint adventure, partnership and joint control,

stressing the feature of a presumption being in favor of equal interests in the absence of an express agreement, citing 33 C. J. 861, where it is stated:

"In the absence of an express agreement between the parties to a joint adventure as to the proportions in which they are to share in the profits thereof, the law presumes that they intended that each should share equally with the others, notwithstanding an inequality in the amounts contributed by them to the capital employed in the venture, or in the amount of services performed by them respectively. But this presumption is not conclusive, and, if the conduct and course of dealings between the parties indicate a different intention, that intention must control."

It is also stated in 15 R. C. L. 502 that—

"The presumption is that the profits arising from a joint enterprise are to be divided equally among the joint adventurers. . . . But the right to an equality of profits may be changed by contract between the parties."

The difficulty we have in applying that sound doctrine to the pleadings and testimony in this case is not only in determining that the parties herein were engaged in a joint adventure, but also in saying there was an absence of an express agreement between them as to the proportions in which they were to share the profits, if any. The plaintiff alleged there was a specific contract of that kind which was that plaintiff should receive one half of the profits, which would answer the definition of an express agreement. The plaintiff, in his testimony on the trial as to the conversation had between him and the defendant on this subject, said:

"I told him I made a deal with Phillips and he said, 'I will drill the deal,' and I said, 'What kind of deal can we make?' and he said, 'I will give you one half of what I have left when I get my money back,' to which I agreed."

That seems to have in it all the necessary elements of an express agreement. The testimony of the defendant differs from that of the plaintiff as to the place where such conversation between plaintiff and defendant took place, but neither party testifies that there was more than one conversation between them on the question of sharing in the profits. The testimony of the defendant does not give the exact language of the plaintiff in response to the offer of the defendant to him, either in direct examination or cross-examination, which is argued as weakening defendant's testimony regarding an acceptance of his offer. The defendant's testimony on this subject was—

"He came to my office one morning and said he thought a deal could be made on the southeast of one, which is offsetting a gas well, for an over-

riding royalty, and I said, 'Colly, if we can make some sort of deal with Phillips I will carry you for one eighth of the profit, and he and I together went to Bartlesville."

He also denied that he ever made a proposition to plaintiff to give him one half. The main difference between the two statements is as to the share or proportion the plaintiff was to receive. Was it one half or one eighth of the defendant's profit or interest? Each party contends that there was a definitely expressed agreement as to the share of plaintiff in the profit. Such a controverted matter as to the share or proportion plaintiff is entitled to receive, or even the plaintiff's allegations and testimony alone, is just the opposite of an absence of an express agreement. Suppose all that was said about the share or proportion the plaintiff should receive was that it would be a reasonable share. That would more nearly have been a case in the absence of an express agreement. Either one half or one eighth is a definite expression as to amount, and if satisfactory to the other party it would be an express agreement.

We think this is a fact case and that there is no necessity of determining whether the facts make a case of joint adventure, partnership, joint control or agency. If there was an agreement, which neither party denies, what was the share—one half or one eighth? Suppose instead of having only the testimony of the plaintiff and defendant on this disputed feature as to share, we had eight or ten additional witnesses who heard the conversation, and all of them corroborate the story told by one of the contending parties, we would not be asked to use a legal presumption as to an even division of profits, nor to consider the privileges and rights of a joint adventurer or a partner. Very often the trial court or the jury has the more difficult duty of deciding between just two witnesses who differ seriously as to some feature involved in the case, but that makes it none the less a matter of fact to be determined, and the burden of proof is usually on the plaintiff.

The court found in favor of the defendant in this case, that the plaintiff was entitled to an undivided one eighth of defendant's profit in respect to defendant's interest in the oil and gas leasehold estate, and we feel that there was sufficient competent evidence to sustain such finding. We also hold that the conclusions of the court and the judgment rendered are fully supported by the findings, regardless of the reference in the second conclusion as to a commission, which we deem to be unnecessary.

The judgment is affirmed.