No. 33,565

JOHN A. SHOEMAKE, *Appellee*, v. JAMES DAVIS, *Appellant*.

(73 P. 2d 1043)

Opinion filed December 11, 1937.

*Austin M. Cowan, C. A. McCorkle* and *Robert H. Nelson,* all of Wichita, for the appellant.

*A. W. Hershberger, J. B. Patterson, Enos E. Hook* and *P. J. Warnick,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to enforce an oral contract concerning the acquisition of an oil and gas lease and for an accounting pertaining thereto.

Plaintiff, a resident of Wichita, was engaged in securing oil and gas leases and disposing of them for a profit. He had several years' experience in that business, in the pursuit of which he had become conversant with the development and prospective development of the oil and gas industry in central Kansas and kept tab on the expiration and cancellation of oil and gas leases thereabout.

Defendant, also a resident of Wichita, was a man of some means. He owned a drilling rig and had many years of experience in drilling oil wells.

About March 1, 1934, plaintiff made an examination of certain county records and thereby learned that an oil and gas lease of 240 acres of land on the county lines of Rice and Ellsworth counties, which had theretofore been held by the Gypsy Oil Company, had been canceled. Plaintiff ascertained that the landowner, one Edwards, resided in Wichita, and called on him. Edwards signified his willingness to give a new lease of the premises for ten years on the usual terms as to royalties, but that in addition thereto he would require a down payment of one dollar per acre, and a further payment of one dollar per acre annually for the privilege of delaying the commencement of drilling operations.

Plaintiff then called on defendant Davis and told him he could obtain such a lease in promising territory if Davis would put up the money. Davis agreed to do so. Plaintiff's version of the arrangement was as follows:

"A. I then went to see Mr. Davis and told him the situation and that we could probably get a good play on that lease in the next few months if we wished to sell it, or if we wished to carry it, it would be a good lease to hold for three or four years.

"Q. All right? A. And I asked him if he would carry me for a quarter interest in it if I would buy it at that price, and he said he would."

Defendant's version of the facts reads:

". . . . about the 4th of March, 1934, I had a conversation with Mr. Shoemake regarding the Edwards lease. That conversation took place in my office. He came in and submitted or showed me a lease in Rice and Ellsworth counties that was available, that had been canceled, and stated that he thought it would be a very good lease to buy for resale purposes and so I asked him what it would cost me. He said it would cost me a dollar an acre or $240.

"Q. What else was said? A. I said to Mr. Shoemake, 'What do you want out of this if I buy this lease?' He said, 'Well, I think I can sell it without any doubt and I would be perfectly satisfied to take twenty-five percent of the net profits."

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Q. What did you say to that? A. I said, 'Well, if you think you can resell that lease, I will be perfectly willing to put up $240, providing you can go out and sell that lease and make a net profit on it, and let you be the judge of the profit.'"

Following his conversation with defendant, plaintiff again called on Edwards, and the latter executed a lease, naming defendant as lessee, and placed it in an agreed bank to be delivered to plaintiff on payment of $240. A draft on Shoemake for that amount was attached to the lease, dated March 3, 1934, and payable at five days' sight. Davis gave Shoemake a check for the required sum, and Shoemake took up the lease and delivered it to Davis.

From this beginning of the contract relationship of the litigants the record proceeds at length to narrate inconsequential sayings and doings of the parties during the year 1934 and the earlier half of 1935; but in the autumn of that year plaintiff and defendant made an agreement whereby one C. E. Skiles should have assigned to him eighty acres of the leased premises in consideration of his drilling a well thereon. Skiles undertook to do so, and about January 15, 1936, he brought in a producing oil well.

Shortly afterwards plaintiff called on defendant and said that since the lease had become valuable he wanted something in writing to show his interest in it. Davis declined that request, and this lawsuit followed.

The pleadings developed the issues of fact. The cause was tried without a jury. The court made findings of fact and conclusions of law favorable to plaintiff, and gave judgment as follows:

"II. The plaintiff is the owner of an undivided one-fourth (¼) interest in the oil and gas lease and the leasehold estate covering the . . . [160 acres described].

"III. An accounting should be taken between the parties in accordance with their respective interests in said lease."

Hence this appeal.

Defendant contends that the oral agreement between Shoemake and himself was unenforceable under the statute of frauds. He postulates the proposition that the relationship of the parties was not one of partnership nor a joint adventure, because, he argues, there was no agreement between them to share whatever losses might be sustained, nor concerning the sharing of any profits which might be made out of the lease. Such is, indeed, a common test for determining whether a business relationship of parties is of the nature of a

partnership or joint adventure. In *Moore v. Thompson*, 105 Kan. 492, 184 Pac. 980, it was said:

"One of the important tests in determining the existence of a partnership is the sharing of profits and losses of the enterprise. This test is not conclusive, as there may be a sharing of profits with an agent or servant as partial compensation for services, and such relationship will not constitute a partnership. (*Shepard v. Pratt*, 16 Kan. 209; *Beard v. Royland*, 71 Kan. 873, 81 Pac. 188; *Wade v. Hornaday*, 92 Kan. 293, 140 Pac. 870.)" (p. 493.)

In *Curtis v. Hanna*, 143 Kan. 186, 188, 189, 53 P. 2d 795, where the existence of a partnership or joint adventure was under consideration, it was said:

"We assume, however, that the trial court, if the matter was specifically called to its attention, took note of the similarity between a partnership and a joint adventure (see 15 R. C. L. 500, 33 C. J. 841, Annotations in 48 A. L. R. 1055, 63 A. L. R. 909, *Livingston v. Lewis*, 109 Kan. 298, 198 Pac. 952, and cases cited).

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"We deem it unnecessary to attempt to define precisely the terms 'partnership' and 'joint adventure.' They have much in common; to a considerable extent a joint adventure is a partnership, not general in its field of operation and length of duration, but limited to a particular enterprise or venture. (33 C. J. 842 and citations above.)"

But, as remarked in *Moore v. Thompson*, supra, the test of sharing profits and losses is not a conclusive determinant of the relationship of parties to a business undertaking. Just what technical designation should be ascribed to a business undertaking where one of two men agrees to contribute his money to the acquisition of an oil and gas lease, and the other contributes his knowledge and energy to the matter of obtaining such a lease, when their purpose is to make a profit by it? Sharing of losses? Yes, one will lose his money and the other his work if the project is a failure. Sharing of profits? Yes, if the venture is successful and there are profits to be shared. There is nothing in the decided cases nor in the textbooks which says that the sharing of profits and losses in a partnership or joint adventure must be the same in kind. Fairly considered, we think the agreement between plaintiff and defendant implied such a sharing of profits and losses, and was essentially a joint adventure.

In *Shepard v. Pratt*, 16 Kan. 209, 213, where the accuracy of an instruction on an issue of partnership was under scrutiny, Mr. Justice Brewer said:

"It is not true that an equal division of the profits always and under all circumstances constitutes a partnership. While such may be one of the tests of a

partnership, yet it is only one of several tests, and is sometimes overborne by other and controlling facts."

We do not need to look beyond our own reports to discover cases where it has been held that the relationship of partners or joint adventurers may exist where one contributed money or property and another his time and labor to an undertaking for their prospective mutual advantage. Such was essentially the view of this court in *State Bank v. Girardy,* 117 Kan. 585, 232 Pac. 1076, where Girardy and DeMoss entered into an arrangement for the growth of grain, feed and livestock. Girardy furnished the land, the seed grain and the livestock. DeMoss farmed the land and cared for the livestock. The matter of sharing of profits and losses was stated by Girardy thus: "I will buy steers and we will share the profits and losses. If they don't make anything, we don't lose much, nothing but our feed." This court held that the business relationship of Girardy and De-Moss was essentially that of partners or joint adventurers. In the opinion Mr. Justice Mason said:

"It was not essential to the plaintiff's recovery that the arrangement between Girardy and DeMoss should have amounted to a general partnership, or to a partnership at all in the strict sense, as the term is accurately used. The testimony of DeMoss lacks definiteness, but giving it the favorable construction, aided by reasonable inferences, to which it is entitled upon a demurrer to the evidence, it is sufficient to show prima facie that he and Girardy were engaged in such a joint adventure. . . . It is said, 'The leasing of a farm for a term of years under an agreement that the owner shall receive in lieu of rent a stipulated portion of the net profits derived from the sale of the crops produced thereon is generally held to create a joint adventure.'" (p. 588.)

In *Motter v. Smyth,* 77 F. 2d 77, a father and son had a business arrangement whereby one was to interview prospective customers for railroad corporate stocks and the other was to collect data concerning the railroads in whose stocks they proposed to deal. The circuit court of appeals held that the business was a joint adventure, citing our own case of *Crawford v. Forrester,* 108 Kan. 222, 194 Pac. 635. In the opinion it was said:

"It is not necessary to 'joint adventure' that parties furnish capital or services in equal amount, and fact that one contributes property previously acquired does not destroy validity of arrangement." (Headnote 2.)

See, also, *Fahey v. Ramsel,* 128 Kan. 502, 278 Pac. 715; notes in 48 A. L. R. 1055 *et seq.;* and 63 A. L. R. 909, 914 *et seq.*

In 2 Rowley's Modern Law of Partnership, 1341, it is said:

"A contract of joint adventure need not be express, it may be implied from

the conduct of the parties. It is not necessary that the interests and profits of the parties be definitely settled by the agreement. The mutual promises of the parties are sufficient consideration for the contract, and the furnishing of capital by the parties is not necessary to the validity of the contract. A parol agreement may be sufficient to establish a joint adventure in the purchase and sale of real estate, and is not within the statute of frauds."

What we have said and cited above has been prompted by defendant's contention that the oral agreement between plaintiff and defendant would have been void under the statute of frauds unless some sort of fiduciary relationship were shown to exist as in that of partnership or joint adventure. In the latter situation, of course, the statute of frauds has no application.

In *Crawford v. Forrester*, 108 Kan. 222, 194 Pac. 635, it was said:

"The contract was not affected by the statute of frauds, because it dealt with the personal relations of joint adventurers, and not with the sale of real estate. (*Duncan v. Johnson,* 89 Kan. 21, 130 Pac. 655; *Bird v. Wilcox,* 104 Kan. 799, 180 Pac. 774; *Goodrich v. Wilson,* 106 Kan. 452, 188 Pac. 225.)" (p. 223.)

Other authorities are to the same effect. One of the headnotes to *Felbel v. Kahn,* 29 App. Div. 270, 51 N. Y. Supp. 435, reads:

"In an action to recover under an alleged special agreement by which, in consideration of services rendered by the plaintiff in respect to the sale of certain real property which the defendant bought, the defendant agreed to pay over to him one half the profits that might be realized on a resale, which was in fact subsequently effected, *held,* that the contract was not one of partnership, which required an accounting to settle the rights of the parties, but a joint adventure, which, having been executed, might be recovered on at law, even though not in writing."

In the opinion it was said:

"The contract sworn to by the parties was not a contract of partnership, which required an accounting to settle the rights of the parties. It was a joint adventure to share in the profits of a contemplated speculation in real estate, which were easily ascertained by a simple computation. It was not required to be in writing (*Babcock v. Reed,* 99 N. Y. 609, 1 N. E. 141; *Ostrander v. Snyder,* 73 Hun, 378, 26 N. Y. Supp. 263); and, having been executed, there was no legal reason why the plaintiff should not recover at law what he was entitled to upon it if the jury was satisfied that he made out his case." (p. 436.)

In *Curtis v. Hanna,* 143 Kan. 186, 53 P. 2d 795, and in *Collingwood v. Palmer,* 144 Kan. 636, 62 P. 2d 910, the plaintiff in each case was defeated in his claim to an interest as a joint adventurer in the oil and gas leases taken in the names of their adversaries— but that was merely because of a failure of proof. Neither case detracts in the slightest degree from the soundness of the judgment

reached by the trial court in the case at bar. Appellant cites cases like *Hoover v. Hopkins*, 122 Kan. 65, 251 Pac. 411, which hold that the proof of a claimant's interest in land based upon an oral contract, where enforceable at all, where his adversary holds the title must be clear and convincing. Quite so. But must the proof be clear and convincing to the appellate court? Not necessarily. It must be clear and convincing to the tribunal authorized to ascertain the controverted issues of fact. In *Klein v. Blackshere*, 113 Kan. 539, 541, 215 Pac. 315, where the sufficiency of the evidence to an oral gift of land was under consideration, this court said:

"The rule that certain matters require more than a mere preponderance of evidence for their proof is one to be applied by the trial court and 'where the findings are supported by competent and substantial testimony it will be presumed that the district court applied the proper test in weighing the evidence and finding the facts.' (*Wooddell v. Allbrecht,* 80 Kan. 736, 104 Pac. 559, syl.) 'Even in a criminal case, where the guilt of the defendant must be proven beyond a reasonable doubt, a verdict supported by substantial testimony is conclusive upon the reviewing court.' (*Leverton v. Rork,* 74 Kan. 832, 85 Pac. 800.)"

In *Hoover v. Hopkins*, 122 Kan. 65, 251 Pac. 411, it was said:

"The rule that parol evidence to establish existence and terms of a trust for the benefit of third persons, in the estate of a testator in possession of a sole devisee under a probated will, must reach an exceptionally high degree of certainty, is a rule to be observed by the district court, and on appeal from a judgment establishing such a trust, the function of this court is limited to ascertaining if there is any substantial evidence to sustain the decision." (Syl. ¶ 1.)

See, also, *Bryant v. Bartelli,* 118 Kan. 75, 78, 233 Pac. 1035; *Reitz v. Cooper,* 123 Kan. 755, 764, 256 Pac. 813; *Wilson v. Stafford,* 124 Kan. 382, 384, 260 Pac. 627.

Another test of the existence of a partnership or joint adventure is that of joint control. (*Sutton v. Railway Co.,* 104 Kan. 282, 284, 285, 178 Pac. 418, and citations.) The evidence to which the trial court gave credence was that plaintiff and defendant did exercise joint control of the lease. They consulted with each other about the advisability of selling the lease and the advisability of holding on to it unless they could make a profit of $10 per acre. The plaintiff's evidence also tended to prove that the parties did consult and agree as to the arrangement whereby eighty acres of the leased premises should be conveyed to C. E. Skiles in consideration of his drilling an oil or gas well on the property.

The next point urged is that the evidence did not prove the contract as alleged by plaintiff, but merely that plaintiff was to have a commission of twenty-five percent of whatever profit might be realized if the lease were sold. According to plaintiff's testimony, which was the evidence the trial court chose to believe, the agreement was that Davis, the defendant, was to carry Shoemake, the plaintiff, for a quarter interest in the lease. Certain Oklahoma cases, *Winemiller v. Page*, 75 Okla. 278, 183 Pac. 501, and *McGee v. Urschel*, 177 Okla. 337, 58 P. 2d 1228, are cited. Counsel for appellant construe those cases to mean that the supreme court of Oklahoma takes judicial notice that in the acquisition and sale of oil and gas leases such language as the parties here used, "carry me for a quarter interest," means the specified interest of a broker of leases—a commission agent's percentage interest in whatever amount the lease is sold for in excess of its cost. We have not the slightest doubt that the Oklahoma cases were correctly decided under Oklahoma jurisprudence, but we do not regard them as committing that eminent court to such an extraordinary exercise of the court's power and duty to take judicial notice of matters of common knowledge. Certainly this court cannot take judicial notice that the conversation between the parties—Shoemake's question and Davis's response—constituted an agreement that Shoemake should only have a broker's commission of twenty-five percent of whatever profit might be made on the acquisition of the lease. The parties adduced their evidence on what the language "carry me for a quarter interest" did mean and the trial court's finding on the controverted fact is conclusive.

The other matters urged upon our attention have been carefully considered; but they do not warrant discussion and are not of sufficient gravity to affect the result.

The judgment is affirmed.