238 F.2d 917
 ST. PAUL-MERCURY INDEMNITY COMPANY, Appellant,
v.
UNITED STATES of America FOR THE USE OF H. C. JONES, doing
business as H. C. Jones Construction Company, Appellee.
Burden Ivy BARFIELD, Bourdon Ray Barfield, and Oliver Eakle
Barfield, as co-partners doing business as
Barfield Construction Company, Appellants,
v.
UNITED STATES of America FOR THE USE OF H. C. JONES, doing
business as H. C. Jones Construction Company, Appellee.
 Nos. 5331, 5332.
 United States Court of Appeals Tenth Circuit.
 Nov. 13, 1956.
Rehearing Denied Jan. 4, 1957.
 
 Howard T. Fleeson, Homer V. Gooing, Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Gerrit H. Wormhoudt, Wichita, Kan., for appellant St. Paul-Mercury Indemnity Co.
 W. F. Lilleston, George Stallwitz, Richard W. Stavely, Wichita, Kan., for appellants Burden Ivy Barfield, Bourdon Ray Barfield, and Oliver Eakle Barfield, as co-partners doing business as Barfield Const. Co.
 James P. Mize, Salina, Kan., George B. Powers and Malcolm Miller, Wichita, Kan., for appellee.
 Before HUXMAN, MURRAH and PICKETT, Circuit Judges.
 PICKETT, Circuit Judge.
 
 
 1
 H. C. Jones, d/b/a Jones Construction Company, brought this action under the Miller Act, 40 U.S.C.A. § 270a et seq., against Barfield Construction Company, a copartnership composed of Burden Ivy Barfield, Bourdon Ray Barfield, and Oliver Eakle Barfield, and St. Paul-Mercury Indemnity Company, a corporation, to recover the reasonable value of labor and material furnished to Barfield at Salina, Kansas, on government contracts. Barfield was the prime contractor on three separate contracts for the improvement and expansion of Smoky Hill Air Force Base and St. Paul executed a payment bond on the three contracts as required by the Miller Act. Jones verbally agreed with Barfield to do the excavating, ditching, earth moving and cushioning work, commonly known as dirt work, required by the prime contracts and was to receive two-thirds of the profits realized on this portion of the work. Barfield was to advance sufficient funds to pay Jones' costs and expenses, but a dispute arose as to what items were to be included in Jones' costs prior to determination of profits.
 
 
 2
 In his complaint Jones alleged that Barfield breached the verbal contract and prevented completion of the work. He sought to recover the reasonable value of the services rendered. The court found that Jones was a subcontractor, protected under the Miller Act; that there was a substantial breach of the contract by Barfield. The court also found that the quantum meruit value of Jones' performance under the subcontract, including change orders and extras not covered by change orders, was $397,301.67.[1] To this amount was added the sum of $35,762.70 for miscellaneous services furnished to Barfield, including service station, shop and rental services. After deducting credits the sum found to be due Jones was $149,186.66. Judgment was entered for this amount against Barfield, and against St. Paul for $148,111.49.
 
 
 3
 The principal contentions of St. Paul are that the trial court was without jurisdiction because the relationship between Jones and Barfield was that of joint adventurers and that Jones was not a subcontractor, therefore could not maintain an action under the Miller Act, and that the judgment is not sustained by the evidence. Barfield admits that Jones was a subcontractor and maintains that there was no substantial breach of the subcontract and that there was a failure of proof of reasonable value of the performance under the subcontract. Barfield also alleged that Jones was overpaid and sought to recover the amount of the over-payment on a counter-claim.
 
 
 4
 The record is voluminous, the evidence confusing and conflicting, and the findings a general resume of the evidence accepted by the court, but stripped of all the nonessentials three questions are presented: (1) Was Jones a subcontractor of Barfield, or was their relationship that of partners or joint adventurers? (2) Was there such a breach of the terms of the oral agreement by Barfield as to permit Jones to disregard the subcontract and recover the reasonable value of the completed work? (3) Was there sufficient evidence to sustain the court's finding as to the reasonable value of the labor and materials furnished by Jones?
 
 
 5
 Barfield, in its answer, which was adopted by St. Paul, admits that Jones was a subcontractor. In an amended answer, it is alleged generally that the court lacks jurisdiction over the parties. The purpose of the Miller Act is to protect those who furnish labor and material for public construction and to insure that they will be paid for the same. Moyer v. United States, for use of Trane Co., 4 Cir., 206 F.2d 57, 39 A.L.R.2d 1098; Liebman v. United States for use of Cal. Electric Supply Co., 9 Cir., 153 F.2d 350; Commercial Standard Ins. Co. v. U.S. for use of Crane Co., 10 Cir., 213 F.2d 106. The Act was not designed to protect general contractors. It is conceded that a partner or a joint adventurer in the contract itself, or a portion of it, would not be one of those protected by the Miller Act. Consequently if Jones was a partner or a joint adventurer with Barfield there was no jurisdiction under the Miller Act. Theobald-Jansen Electric Co. v. P. H. Meyer Co., 10 Cir., 77 F.2d 27; United States for Use and Benefit of Walker v. United States Fidelity & Guaranty Co., D.C.Wyo., 4 F.Supp. 854
 
 
 6
 The agreement between Barfield and Jones contains some elements of a partnership or joint adventure, the principal one being a division of profits. An agreement to divide profits, however, does not necessarily create a partnership relation which would prevent a recovery under the Miller Act. Aetna Ins. Co. v. Murray, 10 Cir., 66 F.2d 289; see Weiland v. Sell, 83 Kan. 229, 109 P. 771; Beard v. Rowland, 71 Kan. 873, 81 P. 188. The true relationship must be determined by the conduct of the parties, together with all the other material facts and circumstances. Grannell v. Wakefield, 172 Kan. 685, 242 P.2d 1075. Jones was not to share in losses, as under the contract which the trial court found to exist he was to be reimbursed for all his costs including rentals for his machinery. St. Paul urges that this is a typical case of one party furnishing his money and another his time and effort to a project with an understanding that there shall be a division of profit; therefore a partnership or joint adventure exists under the rule of Shoemake v. Davis, 146 Kan. 909, 73 P.2d 1043. The Shoemake case recognizes the rule that the furnishing of labor and the division of profits is only one of the tests for determining the relationship of the parties. The court characterized the agreement as a cost-plus contract wherein Barfield guaranteed Jones all of his costs and, in addition, two-thirds of the profits, based upon the amount paid by the United States to Barfield for the work covered by the subcontract. The advances were made to Jones and his accounts were paid directly by him. Although Jones' books were kept in a manner which would indicate a joint enterprise, there was evidence that this was done to protect the parties for their respective advances and expenditures. Barfield had no control over the Jones portion of the work except to see that it conformed to the prime contract specifications. The relationship between Barfield and Jones was not materially unlike that between the parties in Southern Painting Co. of Tenn. v. United States for use of Silver, 10 Cir., 222 F.2d 431, where a suit under the Miller Act was upheld.[2]
 
 
 7
 A subcontractor, as defined by the Miller Act, is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract. MacEvoy Co. v. United States for use of Tompkins Co., 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163; Southern Painting Co. of Tenn. v. United States for use of Silver, supra; Basich Bros. Construction Co. v. United States for use of Turner, 9 Cir., 159 F.2d 182. The evidence is undisputed that Jones took from Barfield a specific part of the labor and material which the latter was required to furnish under the prime contract. Under the agreement, Jones was required to move his heavy machinery onto the job and furnish all the labor and materials and to perform all the excavating, ditching, earth moving and cushioning work which Barfield was obligated to do. In addition, Jones took over and completed certain change-order and extra work which Barfield was required to and did agree to perform for the United States. He did everything that a subcontractor ordinarily does except finance himself. This suffices to constitute Jones a subcontractor with a right of action under the Miller Act.
 
 
 8
 We held in the Southern Painting Company case that in a Miller Act case a subcontractor, upon breach of a subcontract, may forego any suit on the contract and sue for the reasonable value of his performance. See also Restatement, Contracts, Sec. 347 (1932); United States for use of Susi Contracting Co. v. Zara Contracting Co., 2 Cir., 146 F.2d 606; Jensen v. Lee, 67 Kan. 539, 73 P. 72.
 
 
 9
 Accepting the oral contract as found by the Court,[3] as we must, we think there was a breach on the part of Barfield wich would permit Jones to sue for the reasonable value of his services and materials furnished. Barfield admits that he was to furnish Jones sufcient money to pay all the ordinary costs incurred in connection with the work which he was to perform and alleges that Jones as subcontractor was to do the work at the prices used by Barfield in the submitted bids. The parties were in disagreement as to how the rentals for the use of Jones' machinery was to be handled. Jones contended that he was to be paid the agreed amount for rentals along with other costs and that such rentals were paid until about September of 1952. Barfield claimed that he agreed to pay only the amounts which were expended in renting machinery not owned by Jones. He said that the agreed rental for Jones' machinery was to be used only in computing costs when profit was to be determined. The court accepted Jones' version of the contract. This finding was on conflicting evidence and not clearly erroneous and may not be set aside on appeal. Fed.Rules Civ.Proc. rule 52(a), 28 U.S.C.A.; Van Dreal v. Van Dreal, 10 Cir., 214 F.2d 715. The contract placed upon Barfield the duty to pay all of the expenses incurred by Jones, including the rental for his machinery. The evidence disclosed that prior to September, 1952, due to shortage of money, requests for funds by Jones should be curtailed, particularly for rentals. Beginning in September Barfield was slow in advancing necessary costs and no amounts were paid for machinery rentals. Jones became financially embarrassed and was required to borrow money to continue the work. Early in January of 1953 Barfield contended that Jones had already received more money than he had earned and refused to acknowledge any further requisitions. Jones notified Barfield that because of this failure he was forced to discontinue work and stated that if the requested payments were not paid forthwith as required by the subcontract, it would be assumed that Barfield no longer intended to comply. No further payments were made and Jones was unable to finish the contract, which the court found was approximately ninety-eight percent completed at the time.
 
 
 10
 It is contended that the breach was trivial and that there was substantial completion of the contract which would prevent Jones from disregarding its provisions. The court found that at the time of the breach Barfield had failed to pay almost $53,000 which was due Jones. Such a failure can hardly be said to be a trivial matter. As to the question of substantial completion of the contract, this seems to be an afterthought, as no such defense was pleaded and the answer alleged that on January 12, 1953 'the subcontract work was then approximately 80% completed.' The issue was not presented to the trial court and no finding was made on the subject except as to the amount of the unfinished work. The facts, however, closely resemble those in the Southern Painting Co. case where it was said that the contract was 'practically completed.' We find no merit in these contentions.
 
 
 11
 The trial court found that the reasonable value of Jones' performance under the contract, including change orders and extras not covered by change order, was $397,301.67. These were the items sued for in the three causes of action set forth in the complaint. It was also found that Jones had furnished Barfield miscellaneous services of the value of $35,762.70.[4] Barfield was credited with $283,877.70, leaving a balance due of $149,186.66. $148,111.49 of the balance was held to be covered by the payment bond. Barfield and St. Paul each argue very forcefully that the evidence of damages is insufficient to sustain the judgment. These are questions of fact and must be sustained if supported by substantial evidence and if not clearly erroneous. The essence of the argument directed toward the value of the work done under the subcontract, including change orders and extra work, is that the court erroneously relied upon the amount of the progress payments made to Barfield by the United States as the reasonable value of the services performed and the materials furnished by Jones. The three prime contracts were lump sum contracts for the completion of two building units and one hydrant fueling system. The excavation and dirt moving portions of these contracts which Jones undertook constituted a rather small percentage of the total requirements of the contracts. The prime contracts provided that the United States would make payments to the prime contractor as the work progressed. For the purpose of computing what these progress payments would be, Barfield and representatives of the United States agreed, along with other categories of the work, what percentage the excavation work was of the entire contract. This has been referred to as the 'weighted average' or 'weighted percentage' of different categories of the contract to the whole. Barfield received this agreed amount for the Jones work.
 
 
 12
 The amounts received by Barfield as progress payments were established, buttressed by the testimony of government engineers and architects that the weighted percentages for progress payments were reasonable and accurate allocations of the total contract price and fairly represented the value of the various components of work, including that performed by Jones. Jones, who had been in the dirt moving business for many years, testified that these amounts were the reasonable value of the work which he performed and the materials which he furnished. He prepared exhibits showing the minimum quantities of dirt moved and other items furnished on the job with his estimate of the reasonable value thereof. He testified that considering unfavorable weather conditions during the time of performance and underground water difficulties that 'the prices were very cheap' and that he had actually moved many more yards of material than those computed from the plans and specifications. The values contended for by Barfield were considerable less than the amount of the progress payments and the computations of Jones. The trial court accepted the amounts of the progress payments and the amounts received by Barfield for change orders and extra work as being the reasonable value of the services rendered by Jones.
 
 
 13
 Appellants argue that permitting the judgment to stand on proof of this nature allows Jones to recover as though suing on the subcontract without consideration of Barfield's right to one-third of the profits, thereby recovering substantially more than he could have recovered under the subcontract. The answer to this argument is found in the Southern Painting Company case, supra. There, as here, the subcontractor was to be paid an amount over and above the cost of the job but the amount was fixed. Here it was a division of any amount received for the work over and above the cost. Suing in quantum meruit in the Southern Painting Company case plaintiff recovered twice as much as the contract provided for. True, Barfield was to receive one-third of the profits under the contract but that right was lost when he breached the contract. Jones does not contend that the progress payments are liquidated amounts due him. He uses these payments, along with other evidence, in proving the reasonable value of his work. The contract price may be the reasonable value of the services but it is not necessarily so. Each case must stand upon its own facts. United States for use of Susi v. Zara Contracting Co., supra; United States for use of Wander v. Brotherton, D.C.N.Y., 106 F.Supp. 353; Restatement, contracts, Sec. 347 (1932); 5 Williston, Rev.Ed., Sec. 485, p. 4146. Considering the record as a whole we cannot say that the finding is not sustained by substantial evidence or clearly erroneous.
 
 
 14
 In addition to the reasonable value of the subcontract performance of the basic contract requirements, change orders, and extras the court found that from miscellaneous services furnished to Barfield, including service station, shop and rental services, there was an amount due of $35,762.37. Admittedly this is the sum total of Barfield's liability to Jones as shown by Jones' books. This is the only evidence on the subject and although it is sufficient to sustain the liability of Barfield, we are satisfied the evidence is insufficient to show that it was for labor and materials used in the prosecution of the contract work which would make St. Paul liable on its bond.
 
 
 15
 Jones operated a service station at which gasoline and other fuel and supplies were furnished for the equipment of Jones and Barfield, as well as to any others desiring to make purchases. The same was true as to parts and mechanical repairs. Jones also contracted for a substantial amount of additional work on the project which had nothing to do with Barfield's prime contracts or Jones' subcontract. Barfield paid all the operating expenses for the service station and the outside work in the same manner as he did for work and materials furnished for the subcontract. The income from this source was credited to Barfield on Jones' books. There was testimony that Jones could not have continued his work on the subcontract without this money. The item also included an adjustment for exchange work between Jones and Barfield. As has been pointed out, to recover in a Miller Act suit, one furnishing labor and materials to a contractor must establish that the same was used in the prosecution of the work provided for in the contract covered by the bond.
 
 
 16
 The account may have included some items that went to Barfield for use in the performance of the prime contracts which were not included in the reasonable value of the services performed under the subcontract, but the total of these items cannot be established by striking a book balance between the prime contractor and subcontractor for all their activities, including those admittedly outside the contract. The purpose of the Miller Act is to secure those who furnish labor and materials for public works. Its provisions are to be liberally construed to carry out its purposes. Commercial Standard Ins. Co. v. U.S. for use of Crane Co., supra. Liberality of statutory construction, however, is not a substitute for the burden placed upon the claimant to prove that the labor and materials making up his claim were furnished in the prosecution of the work. There must be some reliable evidence from which it can reasonably be inferred that the labor and materials went into the prosecution of the bonded job. Conjecture or guesswork is not enough. Consequently the judgment against St. Paul should be reduced by the sum of $35,762.70.
 
 
 17
 Judgment against St. Paul modified and affirmed as to Barfield.
 
 
 
 [1]
 The complaint stated three causes of action, the first for services rendered under the plans and specifications of the prime contract, the second for services pursuant to authorized change orders made by the U.S., and the third for extra work which was authorized
 
 
 [2]
 In the Southern Painting Co. case Silver was to do the plumbing work for a general contractor on two contracts, also at the Smoky Hill Air Force base at Salina, Kan. As in this case he was to be paid all his costs and expenses and in addition a fixed amount of $6,000 on one contract and $4,000 on the other. It there was additional work he was to receive a portion of the profits. Claiming a breach of his contract Silver sued for the reasonable value of his services. We affirmed a judgment holding that the reasonable value of the services was $20,000. Silver had already been paid $7,000, leaving a balance of $13,000
 
 
 [3]
 The court found the terms of the oral contract to be:
 'That the plaintiff was to personally supervise the job and was to do and perform all that portion of the general contract commonly referred to as excavation, backfilling and earth work. That he was to furnish all of his heavy machinery and equipment that was necessary to do and perform the excavating, backfilling and earth work. That the Barfield Construction Company would furnish the financing and would pay all the expenses of the job, including payment to the plaintiff of equipment rentals for the equipment which he was to furnish, based upon an amount equal to 90 percent of the Associated Equipment Distributor's established rental rates for 1950. That rental rates were to be paid for such time as the equipment and machinery were on the job site, available for use in such work, and Barfield would pay the cost of moving the equipment from Amarillo to the job site and return. That after all costs were paid, any profit realized upon the amount paid for the excavation and backfilling and earth moving subcontract on the job would be divided three-fourths to the plaintiff, one-fourth to the defendant, Barfield Construction Company.'
 Before the work began the parties agreed that the profits should be divided two-thirds to Jones and one-third to Barfield.
 
 
 [4]
 The court's finding as to this item is as follows:
 '12. That during the course of the work upon the project, H. C. Jones, Contractor, established a filling and service station upon the job in connection with which services were thereafter extended to others than the Barfield Construction Company for a profit from which the latter received a proportionate share. That in addition thereto, during the course of the operation of the subcontract and with full permission and knowledge on the part of the Barfield Construction Company, H. C. Jones, Contractor, did perform outside work for others, using his personal equipment therefor, such operation being for profit from which Barfield Construction Company received full credit for money advanced by them and for their proportionate share of all profit from such outside sources. The Court finds that for these items including the operation of the service station, shop and rental services, a total sum of $35,762.70 is still due and owing from the defendant Barfield Construction Company.'