## BEECH AIRCRAFT CORPORATION v. ROSS.

### No. 3242.

Circuit Court of Appeals, Tenth Circuit.
May 20, 1946.

Rehearing Denied June 14, 1946.

616

Chas. G. Yankey, of Wichita, Kan. (Harvey C. Osborne and J. G. Sears, Jr., both of Wichita, Kan., on the brief), for appellant.

Paul R. Kitch and Howard T. Fleeson, both of Wichita, Kan. (Homer V. Gooing and Wayne Coulson, both of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Beech Aircraft Corporation, as the manufacturer of airplanes for the United States Army and Navy, entered into a contract with the Douglas Aircraft Corporation to build wings for its A-26 Airplane. The A-26 had never been manufactured when Beech took the contract and its design required the production of many thousands of different parts for which new "toolings" and "jigs" would have to be made. Beech entered into a sub-contract with Milburn M. Ross, doing business as Ross Engineering and Equipment Company to make the new "toolings" and "jigs," and to manufacture certain parts. The contract was evidenced by purchase order No. 1007 and No. 1066, each of which set forth the quantity and price of each unit.

The "purchase order contracts" contemplated reduction or method changes, and provided that such change in price should be subject to negotiations prior to acceptance by the sub-contractor.[1] The prices stipulated in the sub-contracts were subject to revision after completion of the first one hundred units, based upon a cost analysis during the period of fabrication.[2] Any change in the contracts was to be effected by mutual agreement through the medium of supplemental sub-contracts.[3]

In December 1943, before delivery of any units under purchase order contract No. 1007, Ross wrote Beech regarding a "revision of unit price per first one hundred units." Thereafter, the parties executed sub-contract "supplement No. 2" providing for a "tenfold" increase of the price of each unit covered by the original sub-contract, and providing further "these price increases are made due to an underestimate on the original sub-contract and are subject to final revision after completion of the first one hundred (100) units, and are retroactive over the entire sub-contract." [4]

Statements were rendered and settlements were made from time to time in accordance with the revised prices under the supplemental contract. Delivery of the first one hundred units under the contracts was completed in May, 1944. In late June or early July of the same year Beech made a cost analysis, based upon a time study of Ross' shop operations. As a result of this analysis Beech suggested that the unit prices be lowered, and conferences were held in an attempt to mutually agree on a new price. When the parties were unable

---

[1] Item XII "* * * C. Price Reduction or Increase. Unit price reduction or increase, due to engineering, material or method changes shall be subject to negotiations prior to acceptance of such changes by the sub-contractor."

[2] Item XXV "Prices as noted on this sub-contract are subject to revision either upward or downward, after completion of the first one hundred (100) units, This revision to be based on an actual time study of a cost analysis kept by the sub-contractor during the period of fabrication. This record shall at all times be subject to inspection and audit by any person designated by the head of any executive department of the government or any authorized representative of Beech Aircraft Corporation."

[3] Item XVIII "Supplemental Sub-contract Agreement. This purchase order shall be subject to change by mutual agreement through the medium of Supplemental sub-contracts * * *."

[4] The unit prices stipulated in purchase order No. 1066 were revised by supplemental sub-contract No. 1, and it is agreed that the two purchase order contracts, as supplemented, are not different in legal effect.

to reach an agreement on a revision of prices Beech ceased paying Ross' invoices. It continued, however, to accept delivery of parts at the prices contained in the contracts, as supplemented, and to extend the contracts with orders for additional parts until September 1944, when it finally cancelled the contracts. Ross brought this suit on the contracts, as supplemented, to recover the unpaid balance of the alleged contract price for units manufactured and delivered to Beech in the sum of $98,865.43.

Beech's defense to the suit there, and here, is that the prices established by the contracts, as supplemented, were mere estimate, it being the plain intention of the parties to finally revise the unit prices, based upon experience gained from production and a time study of Ross' operations after the first one hundred units had been produced. Accordingly, it tendered a cost analysis of Ross' operations, based upon a time study, and argues that since the parties are unable to mutually agree upon a final revision of the prices the court should judicially determine a price, based upon a reasonable profit, to be retroactive over the entire contract.

The trial court held that by the original purchase order contracts the parties agreed in writing to negotiate price revisions only by mutual agreement; that the parties did so revise the price schedule by the execution of the supplemental contracts, and the prices thus established were binding upon the parties to the contracts until revised by mutual consent, or until the contracts were cancelled under their provisions. In so holding, the court pointed out that there was nothing in the contracts or the supplements to indicate that upon failure of the parties to negotiate new prices, resulting in a cancellation of the contracts, the court was authorized to write a contract for the parties, thereby establishing prices upon which they did not, and could not agree.

It is true that the prices stipulated in the supplemental contracts were subject to final revision, after completion of the first one hundred units, and that the finally revised prices were to be retroactive over the entire sub-contract, but the supplemental contracts provided no formula for final revision of the prices. The parties obviously intended to rely upon the provisions of Item XXV (see footnote 2), which provides for revision after completion of the first one hundred units based upon an actual time study of a cost analysis. Indeed, when Ross requested a change in the unit prices, he expressly stated in his letter of December 23rd, 1943, that upon completion of the first one hundred units the price of each item was to be subject to the provisions of Item XXV.

▉ It is the general rule that a contract price must be definite and certain, or capable of ascertainment from the contract itself, else it cannot be enforced. Vol. 12, American Jurisprudence Contracts, Sec. 70; Annotation, 92 A.L.R. 1396; Williston on Contracts (R.Ed.) Sec. 45. If, however, the contract contains matter which will enable the court to ascertain the terms and conditions on which the parties intended to bind themselves, it will give effect to the manifest intention of the parties. The courts will not permit a contract to fail for the want of a formal detail, which can be supplied within the frame work of the contract itself. Thus, if the contract provides for the payment of a reasonable or a just and equitable price, and the parties are unable to agree upon what is reasonable or just and equitable, the courts will imply that the parties intended for the court to determine a reasonable price as a consideration for the contract. Joy v. St. Louis, 138 U.S. 1, 11 S. Ct. 243, 34 L.Ed. 843; United States v. Swift & Co., 270 U.S. 124, 141, 46 S.Ct. 308, 70 L.Ed. 497; Brunner v. Stix, Baer & Fuller Co., 352 Mo. 1225, 181 S.W.2d 643; Raisler Sprinkler Co. v. Automatic Sprinkler Co., 6 W.W.Harr., Del., 57, 171 A. 214. Or, if the agreement makes no provision with reference to the price to be paid, the court may invoke the standard of reasonableness as a necessary implication of a policy to pay for services rendered, and the fair value of the services or property is the consideration. Vol. 12, Amer.Juris.Contracts, Sec. 324.

Neither party seeks to annul the contracts. Their differences lie in the matter of interpretation. The appellant contends that we not only have a contract for work

to be done without an established price, but one in which the final contract price was to be based upon a time study of a cost analysis after a certain amount of the work has been performed. It is urged that these provisions fixed the standard or formula by which the parties could reach an understanding, but if they could not so agree either party could invoke the judicial process for the ascertainment and enforcement of the price, which the parties by their contract intended, but upon which they could not agree.

[5] We have a contract for the manufacture of goods providing for an estimated price per unit. Clearly by its very nature, the parties could not agree upon a specific price for each unit; that was necessarily left for future determination, based upon the contingencies of cost of production. Accordingly, the parties expressly stipulated for a revision of the prices upward or downward after completion of the first one hundred units, based upon an actual time study of a cost analysis. But the parties also pertinently agreed that any changes in the contract were to be effected by mutual agreement through the medium of supplemental contracts.

In accordance with these provisions, the parties did revise the originally estimated prices upward, due to an underestimate in the original price schedule, with the understanding that the revised prices were subject to a final revision based upon a time study of a cost analysis. But the supplemental agreements did not provide that Ross should be paid a "reasonable" profit based upon a cost analysis, nor did the agreements provide for a "just and equitable" price. The cost analysis furnished only a basis for negotiation for a final revision of the prices—it did not provide an acceptable standard by which the court could give effect to the intention of the parties.

The record indicates persuasively that the appellee recovered more than a reasonable price; that he reaped more than a just and equitable profit for the goods he sold, but the contract was entered into freely between the parties—it was drafted by

appellant, and this is a straight action of law to recover upon it. We are not free to adjust the rights of the parties based upon equitable considerations. Our sole function is to determine whether, as a matter of law, the prices fixed in the contract control in the absence of a revision effectuated under the permissive provisions of the contract. The prices stipulated in the supplemental contracts were tentative and temporary, but they prevail until revised through the medium of supplemental contracts. The parties could not mutually agree upon the terms of a supplemental contract, and we cannot make one for them.

The judgment is affirmed.