No. 39,321

Louis Potucek, *Appellee*, v. H. H. Blair, *Appellant*.

(270 P. 2d 240)

Opinion filed May 8, 1954.

*Verne M. Laing,* of Wichita, argued the cause, and *Lester L. Morris, Ferd E. Evans, Jr.,* and *Ralph R. Brock,* all of Wichita, were with him on the briefs for the appellant.

*Harold Goodwin,* of Wichita, argued the cause, and *W. D. Jochems, J. Wirth Sargent, Emmet A. Blaes, Roetzel Jochems, Robert G. Braden,* and *Guy L. Goodwin,* all of Wichita, and *John Potucek,* of Wellington, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: Plaintiff sought specific performance of an oral contract for a joint adventure in oil and gas operations and for an accounting.

Defendant appeals only from the order overruling his demurrer to the amended petition. In view of his various contentions the pertinent portions of the amended petition are appended hereto for reference and made a part hereof.

The demurrer was based on the grounds (*a*) several causes of action were improperly joined; and (*b*) the amended petition did not state facts sufficient to constitute a cause of action.

We shall refer to the amended petition as the petition.

Relative to the first ground it is urged two separate, distinct and incompatible agreements were attempted to be alleged, the first being that of September, 1946, and the other that of December 15, 1949. We find nothing inherently incompatible between what is alleged to have transpired on those occasions. We think a fair interpretation of the entire petition is that it constitutes a narrative of the conduct of the parties and events over the designated period of approximately five years. That it must be so construed is par-

ticularly true where, as here, there has been full and complete performance of the alleged understandings by appellee and apparently also by appellant until he repudiated the alleged agreements.

Appellant argues the petition does not directly state he agreed to appellee's proposal in 1949 and hence there was no mutuality of contract. The allegations of agreement were sufficient when challenged by demurrer. (See ¶ 10 & ¶ 11 of petition.) Moreover, absence of inceptive mutuality constitutes no defense to the enforcement of an executed contract. (*Heckard v. Park*, 164 Kan. 216, 188 P. 2d 926.)

It is claimed the petition is not drawn on any definite theory; that it is more consistent with a claim for salary under an employment contract than with the theory of joint adventure. We do not think it constitutes a claim on an employment contract. (*Grannell v. Wakefield*, 172 Kan. 685, 242 P. 2d 1075.) When fully considered it discloses an effort to state a cause of action for relief on the theory of joint adventure.

Appellant, however, asserts the facts alleged do not constitute a joint adventure. We shall not repeat the allegations of the petition but refer the reader thereto. The evidence on the trial may prove insufficient to establish that relationship but the allegations of the petition when challenged by demurrer were sufficient. (*Shoemake v. Davis*, 146 Kan. 909, 73 P. 2d 1043; *Flitch v. Boyle*, 147 Kan. 600, 78 P. 2d 9; *Potts v. Lux*, 161 Kan. 217, 166 P. 2d 694; *Grannell v. Wakefield*, 169 Kan. 183, 217 P. 2d 1059; *Grannell v. Wakefield*, 172 Kan. 685, 242 P. 2d 1075; *Beech Aircraft Corporation v. Ross*, 155 F. 2d 615.) In the second Grannell case we held:

"A single definition of a partnership or a joint adventure which is accurate, comprehensive and exclusive for all purposes is extremely difficult. The existence of their essential elements, including the power of joint control, may be determined from the over-all facts, including an oral agreement, the conduct of the parties and the peculiar circumstances of each particular case. (Syl. ¶ 11.)

"The requirement that joint adventurers shall have a joint interest in property, where there is property to be held as a part of the venture, is satisfied if one of them holds an equitable interest therein while the other holds the legal title. But it is possible for one of them to have a sufficient equitable interest in an executed joint adventure, not based on joint ownership of property, to entitle him to an accounting of the profits." (Syl. ¶ 8.)

In *Crawford v. Forrester*, 108 Kan. 222, 194 Pac. 635, the court said:

"It is perfectly clear that we have here a consummated contract, acted on

and partially carried out by both parties. It was of no consequence that preparation of formal evidence of the contract was postponed, or that the particular status of the venture at the time the writing was to be signed could not be known. The subject matter of the contract—acquisition of a block of leases, development, sale of some leases, retention of others, disposition of proceeds of sale, and division of interest in leases retained—was perfectly definite." (p. 223.)

See, also, the Beech Aircraft Corporation case on sufficiency of definiteness of contract.

Appellant contends the oral agreement is void under the statute of frauds. We do not think so. The contract did not deal with the sale of real estate but with the personal relations of the coadventurers with respect to the properties involved and was not affected by the statute of frauds. (*Duncan v. Johnson,* 89 Kan. 21, 130 Pac. 655; *Crawford v. Forrester,* supra, p. 223.) Although oil and gas leases as between a leasor and lessee are within the statute of frauds because they involve real estate that statute does not apply to personal relations and obligations created by an agreement of partners or coadventurers to deal in such instruments between themselves and to divide the profits resulting from the venture. (*Bird v. Wilcox,* 104 Kan. 799, 180 Pac. 774; *Goodrich v. Wilson,* 106 Kan. 452, 454, 188 Pac. 225.)

Appellant asserts if the oral contract be held valid as to oil and gas leases and leasehold estates to be acquired after the commencement of the joint adventure it must be held invalid as to such interests in and to which he held the entire title prior to the agreement. It has been held otherwise. (*Crawford v. Forrester,* supra; *Shoemake v. Davis,* supra; *Griffin v. Reilly,* [Tex. Civ. App.] 275 S. W. 242; *Motter v. Smyth,* 77 F. 2d 77, 79.)

In the Shoemake case we cited the Motter case, which latter case cited our Crawford case and we quoted from the Motter case as follows:

" 'It is not necessary to "joint adventure" that parties furnish capital or services in equal amount, *and fact that one contributes property previously acquired does not destroy validity of arrangement.*' (Headnote 2.)" (p. 913.) (Italics supplied.)

Appellant admits appellee also seeks recovery of his share of the proceeds or profits from lease operations. It is not contended such part of the cause of action is barred by the statute of frauds. If appellee is entitled to any relief the demurrer was properly overruled.

The demurrer further admits appellant has fully performed under the contract. Appellant concedes the established rule that full performance takes a case out of the statute of frauds and that the remedy of specific performance lies if the party seeking performance cannot be compensated in money. He asserts, however, the petition does not disclose monetary relief is impossible. It may not be utterly impossible, but would that relief be certain and, if certain, is it adequate, complete and efficient? Appellee was without knowledge of the amount appellant had received for the separate leasehold properties he had sold. (See petition ¶ 16.) Knowledge of such amounts and of the amounts appellant had invested in the development of various properties, which appellant was entitled to deduct before appellee's interest could be determined, was in the possession of the appellant. Appellee sought and was entitled to an accounting of all matters involved in order to have the actual net value of his share in the respective properties determined. At least until appellant makes such accounting appellee's knowledge of the net value of his interest in the properties will remain uncertain and doubtful. Even if appellee by some other means might conceivably acquire accurate information concerning the net value of some of such properties and brought separate actions to recover his interest in those properties, it would result in a multiplicity of actions. In *Scott v. Southwest Grease & Oil Co.,* 167 Kan. 171, 205 P. 2d 914, it was held:

"In order to prevent a decree for the specific performance of a contract on the ground a remedy at law exists the latter remedy must be as *plain, adquate, complete and efficient as the remedy of specific performance and not circuitous or doubtful.*" (Syl. ¶ 6.) (Italics supplied.)

It may be doubtful whether a judgment for the net value of appellee's interest, if presently known by appellee, would be collectible without further delays and uncertainty. Moreover, such a judgment if collectible might be highly detrimental to appellee in comparison with an equitable division of the properties. It well may be the motivating purpose of appellee's participation in this sort of joint adventure was to acquire properties of this character, or an interest therein, to which he could with great advantage apply his time, energy and special ability. It reasonably may be inferred from the nature of the transaction alleged that this was one of the things for which he may have bargained. We know of no sound reason why, under such circumstances, a court of equity cannot,

and should not, make the award payable in kind in order to make the relief granted as certain, adequate and efficient as possible. (*Botsford v. Van Riper*, 33 Nev. 156, 110 Pac. 705.)

Is appellant correct in contending the oral agreement lacks consideration? We cannot think so. The facts alleged are tantamount to mutual promises. They constitute a valid consideration. It also is here alleged the contract was fully performed by appellee. Surely the acceptance by appellant of appellee's services for a period of years constitutes a valid consideration. Such services were as vital to the success of the venture as appellant's contributions of the physical properties or other capital. (*Shoemake v. Davis*, supra.) The fact a party has received only a nominal salary, in comparison with his interest in a venture, will be taken into account in determining the intention of the parties. (*Kasishke v. Baker*, 146 F. 2d 113.) That, too, is a consideration. In view of all the circumstances there was ample consideration for the contract.

In view of the agreement appellee's interest attached, at the time the oral arrangements were made, to all leasehold interests appellant then owned and to all others when they were procured. (*Crawford v. Forrester*, supra.) His interest also attached at that time to the profits when earned. Only his right to receive returns was postponed until the conditions agreed upon were fulfilled. (*Kasishke v. Baker*, supra.)

A court of equity will not deny specific performance of an oral contract on the ground of indefiniteness if the terms thereof, together with the conduct of the parties in the full performance thereof, disclose the manifest intentions of the parties.

Appellant argues the action is barred. The contention is grounded on the assertion the cause of action, if any, accrued in 1946 when the first alleged agreement was entered into. The contention overlooks what previously was said herein relative to the arrangements as a whole; that the parties operated pursuant thereto; that appellee had fully performed thereunder and first learned of appellant's breach of the contract on or about September 4, 1951. The instant action was filed May 29, 1952. The relationship was a fiduciary one, based on mutual confidence and trust. The cause of action did not accrue before appellant repudiated the trust and the action was timely filed. (*Flitch v. Boyle*, 147 Kan. 600, 602, 78 P. 2d 9; *Staab v. Staab*, 160 Kan. 417, 163 P. 2d 418; *In re Estate of Dieter*, 172 Kan. 359, 367, 239 P. 2d 954.) The action was not barred by laches. (See anno. 13 ALR 2d 765.)

In reaching the foregoing conclusions we have not overlooked appellant's numerous citation of authorities in support of his views. It should be conceded there is not complete uniformity in the decisions of the various courts on the subject of joint adventures or on the subject of specific performance generally, or in cases of this particular character. Nor are we unmindful of the fact that appellant's answer and the evidence may materially affect the merits of the action. We have not ignored the motions appellant leveled at the petitions. The motions and rulings thereon were not of a character which requires stricter construction of the petition than we have given it.

Considering all the allegations of the last petition which was challenged by demurrer we think we would not be justified in reversing the ruling of the trial court.

· The order overruling the demurrer is affirmed.

---

## AMENDED PETITION

In the first portion of the amended petition appellee, in substance, alleged:

Plaintiff had been engaged for more than fifteen years in the business of managing the offices of independent oil producers and operators (setting forth the various activities in which he had been thus engaged); defendant became well acquainted with plaintiff and was familiar with his ability as such a manager from 1935 to 1944, during which period the plaintiff was employed by Hartman-Blair Oil Company and Hartman-Blair Incorporated, corporations in which the defendant was interested; plaintiff's employment with the Hartman-Blair interests ceased about January 1, 1945, after his employers made a sale of part of their properties and a division of others; following such actions the defendant, H. H. Blair, became engaged individually in the business of acquiring oil and gas leases and properties, drilling oil and gas wells and in the operation thereof.

The amended petition further alleged:

"5. The defendant, Blair, after his separation from Hartman-Blair Oil Company and Hartman-Blair Incorporated became engaged as an individual in the business of acquiring oil and gas leases and properties, drilling oil and gas wells and operating oil and gas producing leases.

"6. Between July 15, 1946, and September 1, 1946, plaintiff and

defendant had various conversations, the exact dates of which plaintiff is unable to state, until on or about the latter date when the plaintiff became associated with the defendant in the business of operating, acquiring and developing oil and gas properties with the oral understanding and agreement that the plaintiff was to have an interest in all of the oil and gas properties to be thereafter acquired by them, and that such interest was to amount to not less than a one-eighth interest nor more than a one-fourth interest in such properties.

"7. The amount of such interest was to be determined and agreed upon at a later date, but that said properties were to be acquired and held in the name of the defendant and the income derived therefrom retained by defendant until such time as he had been reimbursed for all monies advanced by him for the acquisition and development of said properties. It was agreed that plaintiff would have no interest in the drilling rigs or equipment. It was further orally agreed that the plaintiff and the defendant would later reduce their agreement to writing and that the written agreement would specify the exact interest to be owned by each of them in such properties, and would further provide that after the defendant had been reimbursed for all monies advanced by him for acquisition and development of said oil and gas properties, the defendant would execute conveyances conveying the agreed interest in such properties to the plaintiff; or that if determined advisable by both parties the profits and monies resulting from the operation of the properties would be reinvested in other properties for the expansion and further development of the business, in which event plaintiff would have the same agreed interest and be entitled to like conveyances of such interest in all other properties so acquired.

"8. At the beginning of the joint venture between the plaintiff and the defendant, as above related, it was mutually agreed that the plaintiff should draw a salary which it was contemplated should be sufficient to meet his current living expenses. As an initial salary, it was mutually agreed that Three Hundred and Seventy-five Dollars ($375.00) per month was to be paid to plaintiff to meet such a requirement. The said sum was less than plaintiff had previously been drawing and was less than plaintiff could have received from other independent oil operators at that time.

"9. The foregoing arrangement as to salary continued until December, 1949, when plaintiff notified defendant that for some time

he had been unable to meet his current living expenses on the monthly salary he had been receiving, and that plaintiff had been forced to advance considerable funds of his own in order to meet such current living expenses. Thereupon defendant gave plaintiff a check for Two Thousand Dollars ($2,000.00) on December 1, 1949, and a check for Five Thousand Dollars ($5,000.00) on December 15, 1949, to apply on plaintiff's account and plaintiff agreed to receive said amounts as full adjustment of his salary account. Thereafter, it was mutually agreed that plaintiff was to receive Seven Hundred Dollars ($700.00) as monthly salary in order to meet his current living expenses.

"10. On December 15, 1949, and at a time when the plaintiff and defendant were discussing the salary adjustments mentioned in the preceding paragraph, the defendant asked the planitiff what he thought would be a fair interest as plaintiff's share of the business. The plaintiff stated to the defendant that in his opinion he should own a one-eighth interest in all oil and gas properties then held in the name of the defendant whether acquired before or after September, 1946, and a like interest in all oil and gas properties acquired thereafter which stood of record in the name of the defendant. Plaintiff further stated that he should own a one-eighth interest in all of the oil and gas business then being conducted under the name of the defendant, except for defendant's drilling rigs, and that he should be entitled to receive a conveyance to such one-eighth interest as to each oil and gas lease whenever the defendant was repaid from production for monies spent by him in the acquisition and development of such property; or in the event of a sale, the defendant should first be reimbursed for the monies expended by him before there was to be a distribution of such one-eighth interest to the plaintiff.

"11. On the same date, December 15, 1949, the defendant stated to the plaintiff that the terms of the agreement and the one-eighth interest as set forth in the preceding paragraph were satisfactory to defendant and that henceforth the plaintiff would be considered to be the owner of an undivided one-eighth interest in all of the oil and gas leases either acquired by the defendant before September, 1946, or by the parties as aforesaid after September, 1946, or to be thereafter acquired by the mutual efforts of the parties, but that the properties would be held in the name of the defendant and that conveyances would be made to the plaintiff of his undivided one-

eighth interest only after the acquisition and development expense of the properties had been paid out as aforesaid, unless it was decided to reinvest the royalties, profit, income and runs from the wells in other properties in which event plaintiff would be entitled to the same one-eighth interest in properties so acquired, and like conveyances of such interest in the properties so acquired. Defendant also stated on December 15, 1949, that he would have a written contract drawn in accordance with the oral agreement as set forth in paragraphs 10 and 11 hereof.

"12. The joint venture of the parties as herein set forth was extremely profitable through the joint efforts of the parties. In 1946, oil runs from the properties held in the name of the defendant amounted to approximately Six Thousand Seven Hundred Dollars ($6,700.00) per month, whereas in 1949 the oil runs were greatly increased and finally attained a rate of Thirty-five Thousand Dollars ($35,000.00) per month through the efforts of the plaintiff and the defendant working together in the business, as herein set forth.

"13. The plaintiff devoted all of his time to the management and handling of the joint venture conducted as herein set forth.

"14. The contract for the aforesaid venture was not reduced to writing nor were any assignments or conveyances of interest made to the plaintiff. From January, 1951, until about July 1, 1951, plaintiff and defendant had many conferences relative to reducing their oral contract to writing the advisability of making some conveyances of interest of the plaintiff, and the method of reporting income from the properties subject to the joint venture. That on these occasions defendant repeatedly stated to the plaintiff he would have his attorney draw up a written agreement embodying the terms of the oral agreement between plaintiff and defendant as hereinbefore set forth in paragraphs 10 and 11, but defendant failed to have such written contract drawn and submitted to plaintiff. At no time during this period did defendant ever deny to the plaintiff that the plaintiff was the owner of an undivided one-eighth interest in all of the producing leases, oil and gas leases, and oil and gas properties then held or thereafter acquired in the name of H. H. Blair, defendant herein.

"15. For some months prior to September 4, 1951, defendant was negotiating for the sale of properties in which the plaintiff had an interest as aforesaid. The first notice this plaintiff received that the defendant denied the oral contract between them and the joint venture into which they had entered as hereinbefore set forth,

was on or about the 4th day of September, 1951, when plaintiff received a letter from defendant's attorney denying that the plaintiff was the owner of any interest in the oil and gas properties then held in the name of the defendant.

"16. On or about the 13th day of October, 1951, the defendant sold a portion of the oil properties in which plaintiff owned an undivided one-eighth interest acquired in the manner heretofore alleged. That prior to making said sale defendant had consulted with plaintiff on numerous occasions, the exact dates plaintiff is unable to state, relative to the terms of the proposed sale and the parties to which the sale was to be made. Plaintiff does not know the exact amount of money received by the defendant from such sale, but is informed and therefore alleges the fact to be that the sale was made for an amount in excess of One Million Dollars ($1,000,-000.00); that plaintiff is informed and believes and therefore alleges that the properties so sold by defendant were all properties upon which defendant had, prior to said sale, been fully reimbursed for all monies advanced by him for acquisition and development.

"17. On the 9th day of November, 1951, after the aforesaid sale was completed, defendant served upon plaintiff a 'notice of termination of employment.' The defendant did not tender plaintiff any portion of the proceeds of the completed sale, nor was any tender made of any portion of the oil and gas leases still held of record in the name of the defendant not subject to the aforesaid sale. Defendant denied and continues to deny that plaintiff has any interest either in the proceeds of the aforesaid sale or in any properties still held in the name of the defendant, although the properties so sold and held were acquired in defendant's name for the benefit of both parties under the joint venture aforesaid.

"WHEREFORE, by reason of the foregoing allegations, plaintiff prays that:

"(a) The relationship between plaintiff and defendant as alleged be determined to be a joint venture in which plaintiff is entitled to:

"(1) One-eighth of the net profits from the aforesaid sale of the properties;

"(2) One-eighth interest in the oil and gas leases retained by defendant but acquired as an asset of the joint venture;

"(3) One-eighth of the net profits of all producing properties held or acquired during the joint venture where said profits were not reinvested in the business.

"(b) A full and complete accounting be had to determine plain-

tiff's true interest in income of every kind received by defendant from the oil and gas business from and after September, 1946.

"(c) A full and complete accounting on any sales of oil and gas properties executed after September, 1946, by defendant.

"And for such further relief to which plaintiff may be entitled, and his costs·herein."