**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 15, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

UNITED STATES COURT OF APPEALS

TENNTH CIRCUIT

---

ALAN E. MEYER; JOHN R. PRATT;
DOVETAIL BUILDERS 2, LLC,

        Plaintiffs–Appellees,

v.

DAVID J. CHRISTIE; ALEXANDER
GLENN; D.J. CHRISTIE, INC.; THE
BLUFFS, LLC,

        Defendants–Appellants.

No. 10-3011

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 2:07-CV-02230-CM)**

---

Susan A. Kidwell of Locke Lord Bissell & Liddell LLP, Austin, Texas (Edwin R.
DeYoung of Locke Lord Bissell & Liddell LLP, Dallas, Texas, William P.
Denning of Sanders Warren & Russell LLP, Overland Park, Kansas, and Grant M.
Glenn and Bruce J. Woner of Woner, Glenn, Reeder, Girard & Riordan, Topeka,
Kansas with her on the briefs), for Defendants–Appellants David J. Christie,
Alexander Glenn, and D.J. Christie, Inc.

Terrence J. Campbell (Catherine C. Theisen with him on the briefs) of Barber
Emerson, L.C., Lawrence, Kansas, for Defendant–Appellant The Bluffs, LLC.

Kenneth N. Hickox, Jr. (William A. Brewer III and Robert M. Millimet with him
on the brief), of Bickel & Brewer, Dallas, Texas, for Plaintiffs–Appellees.

---

Before **MURPHY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

This diversity case revolves around an alleged oral joint venture agreement to pursue a residential housing development in Junction City, Kansas. The jury returned a verdict in favor of Plaintiffs on their claims of breach of the joint venture agreement, breach of fiduciary duty, conspiracy, and unjust enrichment. Defendants raise numerous arguments challenging this verdict on appeal.

### BACKGROUND

In March of 2005, Defendants David Christie and Alexander Glenn met with Plaintiffs Alan Meyer and John Pratt to tour potential sites for a residential housing development in Junction City, Kansas. While looking at the final site, these four individuals allegedly entered into an oral joint venture agreement to purchase and develop this land. Specifically, the jury heard testimony that the parties all agreed: (1) they would call their joint venture Junction City Partners; (2) Mr. Christie would purchase this property using one of his existing entities, Defendant D.J. Christie, Inc.; (3) the property would then be assigned to Junction City Partners; (4) the residential development would be named The Bluffs; (5) Mr. Christie and Mr. Glenn would be fifty/fifty partners with Mr. Meyer and Mr. Pratt; and (6) they would hire as general contractor a company owned by Mr. Meyer and Mr. Pratt, Plaintiff Dovetail Builders.

During the next few months, D.J. Christie, Inc., entered into a contract to

purchase this property; and Dovetail began to solicit subcontractors, draft initial site plans, and purchase and lease equipment for constructing the project. Mr. Pratt and Mr. Meyer worked in consultation with Mr. Christie and Mr. Glenn on financing, initial site plans, and a presentation to convince city officials their development project should receive financial incentives. Following several meetings between the parties and various city officials, Junction City entered into a non-binding memorandum of understanding with "Junction City Partners," in which the City agreed to pay up to $15 million in financial incentives for completion of the residential development.

A few weeks later, Mr. Christie and Mr. Glenn terminated their relationship with Plaintiffs. They then formed a corporation, Defendant The Bluffs, LLC, to which they assigned D.J. Christie, Inc.'s contract to purchase the real property. Several months later, they gave a fifty percent partnership interest in The Bluffs, LLC, to two other individuals, the owners of the company who ended up acting as the general contractor in the development project. The Bluffs, LLC, ultimately received $8 million in financial incentives from Junction City.

Plaintiffs then filed this diversity action in the district court, raising several Kansas state law claims against Defendants. Specifically, Plaintiffs Meyer and Pratt brought claims of breach of the joint venture agreement, breach of fiduciary duty, and wrongful dissociation against Defendants Christie and Glenn. Dovetail also joined Mr. Meyer and Mr. Pratt in claims of civil conspiracy and unjust

enrichment against all four Defendants, including The Bluffs, LLC, and D.J. Christie, Inc. Following a nine-day trial, the jury found for Plaintiffs on all of their claims. On these claims, the jury found actual damages of more than $9 million. Specifically, the jury found that Mr. Meyer and Mr. Pratt lost $7,170,603 in connection with their interest in the joint venture, while the three Plaintiffs together lost $1,907,372 in contracting profits and $118,370 in unreimbursed out-of-pocket expenses. The jury also found for Plaintiffs on their unjust enrichment claim in the amount of $5.5 million, but Plaintiffs ultimately elected to recover the damage award rather than the unjust enrichment amount. The district court accordingly entered judgment in favor of Plaintiffs in the amount of $9,196,345 in actual damages and $100 in punitive damages. This appeal followed.

## DISCUSSION

On appeal, all of the Defendants raise issues relating to Dovetail's standing to bring a civil conspiracy claim, the existence and enforceability of the alleged joint venture agreement, the jury's findings of wrongful dissociation and unjust enrichment, and the award of damages. The Bluffs, LLC, also raises separate issues relating to the civil conspiracy claim.

## I. Dovetail's Standing

We first consider whether Dovetail had standing to pursue a civil conspiracy claim against Defendants, reviewing this jurisdictional issue de novo. *See New Eng. Health Care Emp. Pension Fund v. Woodruff*, 512 F.3d 1283, 1288

(10th Cir. 2008). "A civil conspiracy is not actionable under Kansas law without commission of some wrong giving rise to a tortious cause of action independent of conspiracy." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1268 (10th Cir. 2005). In this case, Mr. Meyer and Mr. Pratt alleged that Mr. Christie and Mr. Glenn committed the independent tort of breach of fiduciary duty against them. Dovetail, however, alleged no such independent tort.

Dovetail asserts that it nevertheless had standing to sue as a third-party beneficiary to the joint venture agreement. However, Dovetail brought no contractual claims under that agreement, and, even if it had, such claims would not state an independent *tortious* cause of action against Defendants. *See id.* (holding that a defendant could not be liable for civil conspiracy under Kansas law where the only actionable claim asserted against it was contractual). Whether or not Dovetail could have successfully pursued a contractual claim against Defendants as a third-party beneficiary to the agreement, Dovetail's theoretical contractual claims do not give it standing to pursue a conspiracy claim against Defendants. *See Bronson v. Swensen*, 500 F.3d 1099, 1106 (10th Cir. 2007) ("Each plaintiff must have standing to seek each form of relief in each claim.").

Plaintiffs also suggest that a civil conspiracy claim requires only a showing that at least one plaintiff has an actionable tort claim against at least one defendant. However, we see no basis under Kansas law for allowing a plaintiff to assert a conspiracy claim based on a tortious injury suffered by another plaintiff.

-5-

Plaintiffs cite to no Kansas cases permitting such a result. Moreover, we have previously interpreted Kansas law to hold that a conspiracy claim cannot be maintained against a defendant where there is no actionable tort claim asserted against this particular defendant, regardless of whether other defendants have committed independent torts, *see Pepsi-Cola*, 431 F.3d at 1268, and we see no basis for interpreting Kansas's independent tort requirement for conspiracy claims more broadly for plaintiffs than for defendants. We therefore hold that each plaintiff asserting a conspiracy claim under Kansas law must have suffered "some wrong giving rise to a tortious cause of action independent of conspiracy," *see id.*, and may not simply adopt the tortious injury suffered by another. Because Dovetail failed to allege Defendants committed any actionable tort against it, we hold that Dovetail lacked standing to pursue its civil conspiracy claim against Defendants.

Dovetail was accordingly not entitled to recover any damages based on this claim. Indeed, because this was the only claim for legal damages Dovetail brought, Dovetail may not recover any portion of the damage award. We also agree with Defendants that the jury's undifferentiated awards to Plaintiffs of $1,907,372 in lost contracting profits and $118,370 in unreimbursed expenses were likely based at least in part on the impermissible inclusion of Dovetail in Plaintiffs' civil conspiracy claim. We therefore reverse the jury's awards for these damages and remand for further proceedings on the issue of Mr. Meyer's

-6-

and Mr. Pratt's damages, if any, relating to lost contracting profits and unreimbursed expenses.

We are not persuaded, however, by Defendants' argument that the addition of Dovetail to the civil conspiracy claim caused impermissible evidence to be introduced that prejudiced the entire trial. Defendants do not contest Dovetail's standing to pursue its unjust enrichment claim at trial, nor are we persuaded Dovetail lacked standing as to that equitable claim. Moreover, Defendants have not identified any evidence that would have been excluded if the trial had been limited to Mr. Meyer and Mr. Pratt's claims. We thus reject Defendants' argument that we must reverse the entire trial based on Dovetail's lack of standing as to the civil conspiracy claim.

## II. The Bluffs, LLC's Liability for Conspiracy

As previously noted, we have held a defendant cannot be liable for civil conspiracy under Kansas law where that defendant did not commit an independent actionable tort, regardless of whether tort claims have been alleged against other defendants. *See Pepsi-Cola*, 431 F.3d at 1268. Because no independent tort claims were alleged against The Bluffs, LLC, we agree with The Bluffs that the conspiracy claim against it cannot be upheld as a matter of law. We note that The Bluffs failed to raise this argument before the district court, which generally would result in forfeiture of this argument on appeal. *See United States v. Jarvis*, 499 F.3d 1196, 1201 (10th Cir. 2007). However, because "the argument involves

a pure matter of law and the proper resolution of the issue is certain," we exercise our discretion to consider this issue, which both parties had the opportunity to address in their appellate briefing. *Id.* at 1202; *see also Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992) (noting that we will apply this discretionary exception on a case-by-case basis). We thus reverse the jury's finding of liability against The Bluffs on Plaintiffs' civil conspiracy claim. Moreover, because no other legal claims for damages were brought against The Bluffs, we reverse the award of damages against The Bluffs.

### III. Existence of a Joint Venture

We turn now to Defendants' argument that the evidence introduced at trial does not support the jury's finding that the parties entered into a joint venture agreement together. This argument was appropriately raised in Defendants' Rule 50(a) motion, and we thus review it de novo. *See Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1216 (10th Cir. 2002).

Defendants argue that we must find there to be insufficient evidence of a joint venture based on our interpretation of Kansas law in *Terra Venture, Inc. v. JDN Real-Estate Overland Park, L.P.*, 443 F.3d 1240 (10th Cir. 2006). In *Terra Venture*, we listed five factors for determining whether a joint venture exists:

> (1) the joint ownership and control of property; (2) the sharing of expenses, profits, and losses, and having and exercising some voice in determining the division of net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or

-8-

implied; and (5) the fixing of salaries by joint agreement.

*Id.* at 1245 (quoting *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 596

P.2d 816, 823 (Kan. 1979)).  We then concluded there was no evidence in that

case as to four of the five factors while the evidence as to the fourth factor, the

intention of the parties, was insufficient to demonstrate the existence of a joint

venture.  *Id.* at 1246.  Defendants argue that this holding should control in the

instant case:  because there is only inconclusive evidence bearing on this single

factor and no evidence of the other factors, there is insufficient evidence to

establish a joint venture.

We are not persuaded.  Firstly, we note that these five factors are not

exclusive or outcome-determinative.  *See Modern Air Conditioning*, 596 P.2d at

823 (describing these factors as being "among the acts or conduct which is

indicative of a joint venture"); *see also George v. Capital S. Mortg. Invs., Inc.*,

961 P.2d 32, 47-48 (Kan. 1998) (finding no abuse of discretion in the trial court's

giving of a joint venture jury instruction that did not include the *Modern Air

Conditioning* factors).  Moreover, the evidence regarding these factors is much

stronger in the instant case than in *Terra Venture*.  In *Terra Venture*, the only

evidence suggesting the parties intended to form a joint venture was their

agreement that they would refer to their project as a joint venture in press

releases.  In this case, by contrast, the evidence was that the parties agreed they

would in fact form a joint venture, not just that they would refer to their project

-9-

as such.  The evidence also indicated that Plaintiffs and Defendants informed not just the public but also their employees and attorneys that they were jointly working on the project.  Furthermore, although it is undisputed the parties did not actually share expenses, profits, and losses, the evidence introduced at trial was that they agreed they would share future profits and losses and would "true-up" expenses when the corporation paperwork had been completed.  (Joint App. at 973); *see Goben v. Barry*, 676 P.2d 90, 96 (Kan. 1984) (upholding the trial court's finding of a joint venture based in part on "evidence the agreement provided for a sharing of profits equally between Goben and Barry"); *Potucek v. Blair*, 270 P.2d 240, 268 (Kan. 1954) (indicating that the relevant factor is whether the parties have agreed to split profits, not whether profits have actually been shared).  And finally, there was evidence of at least some joint control over the project based on the parties' consultation with each other as equals on various aspects of the project, particularly in their negotiations with city officials.  *See Shoemake v. Davis*, 73 P.2d 1043, 1047 (Kan. 1937) (finding evidence of joint control based on the parties' consultation with each other about the advisability of taking certain actions).

We likewise reject Defendants' argument that the evidence showed only an anticipatory agreement to form a joint venture in the future, not the actual formation of a joint venture.  The jury was presented with ample evidence from which it could reasonably conclude the parties actually entered into a joint

-10-

venture agreement in March of 2005, and "the mere existence of contrary evidence does not itself undermine the jury's findings." *Thunder Basin Coal Co. v. Sw. Pub. Serv.*, 104 F.3d 1205, 1213 (10th Cir. 1997).

## IV. Statute of Frauds

Defendants next contend we should find the agreement unenforceable based on Kansas's statute of frauds. We review this legal issue de novo.

Defendants acknowledge the general rule that "a joint adventure in the purchase and sale of real estate[] is not within the statute of frauds." *Shoemake*, 73 P.2d at 1046. Nevertheless, they argue that the subsidiary agreement D.J. Christie, Inc., would purchase and transfer the land to the partnership falls within the statute of frauds. They then argue the entire joint venture agreement is unenforceable under the statute of frauds because it was premised on this unenforceable oral agreement to purchase and transfer land. At a minimum, they argue, the statute of frauds must prevent Plaintiffs from recovering any damages relating to D.J. Christie, Inc.'s failure to transfer the real property to the joint venture.

For support, Defendants cite to cases from other jurisdictions, such as the Rhode Island case of *Filippi v. Filippi*, 818 A.2d 608 (R.I. 2003). However, we conclude Kansas law does not support the rule argued by Defendants. Kansas courts have repeatedly held that "the statute of frauds and kindred statutes have no application" to partnership transactions, even when these transactions involve

-11-

real property.  *Goodrich v. Wilson*, 188 P. 225, 227 (Kan. 1920).  Thus, as the

Kansas Supreme Court explained in a very similar context, "[a]lthough oil and

gas leases as between a leasor and lessee are within the statute of frauds because

they involve real estate[,] that statute does not apply to personal relations and

obligations created by an agreement of partners or coadventurers to deal in such

instruments between themselves."  *Potucek*, 270 P.2d at 244.

In an early case relating to oil and gas leases, the parties orally agreed they

would procure leases adjacent to those already owned by the defendant.

*Crawford v. Forrester*, 194 P. 635, 635 (Kan. 1921).  These leases would "be

taken for convenience in the defendant's name," and the defendant would sell

from the block of leases enough to obtain $25,000 for the plaintiff's drilling

operations.  *Id.*  The remaining leases were then "to be assigned to the plaintiff,

who was to own 52 per cent. and the defendant 48 per cent."  *Id.*  Before this

portion of the agreement was carried out or reduced into writing, however, the

defendant appropriated all of the leases to his own use.  Despite the fact the

transfer agreement underlying the parties' joint venture agreement was never put

into writing, the Kansas Supreme Court held that the statute of frauds did not bar

the plaintiff's recovery.  The court reasoned that the statute of frauds had no

effect on the parties' obligations under the joint venture agreement because "it

dealt with the personal relations of joint adventures, and not with the sale of real

estate."  *Id.*  The court thus held that the plaintiff was entitled to recover his

-12-

interest in all of the leases that should have been transferred to him pursuant to the joint venture agreement.

Kansas courts have repeatedly affirmed this holding and reasoning, *see, e.g.*, *Potucek*, 270 P.2d at 245; *Shoemake*, 73 P.2d at 1045-46, and we see no reason to depart from it under the circumstances of this case. Although the statute of frauds would apply to a land purchase agreement as between the seller and the purchaser of the property, it does not effect the relationship between the parties to the joint venture agreement or their obligations under that agreement. We thus hold that the statute of frauds does not bar Plaintiffs' claims or limit their potential damages.

## V. Wrongful Dissociation

Defendants also appeal the jury's finding of wrongful dissociation, arguing they did not wrongfully dissociate from the joint venture because they were free to dissociate at will. This issue was first raised in Defendants' post-trial Rule 50(b) motions and reasserted in their Rule 59 motions for a new trial. We accordingly review the district court's denial of a new trial as to this issue for abuse of discretion. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 762 (10th Cir. 2009).

Under Kansas law, a partner or joint venturer may disassociate at will from the partnership or joint venture agreement without liability for damages caused by the disassociation unless (1) the dissociation "is in breach of an express provision

of the partnership agreement; or (2) in the case of a partnership for a definite term or particular undertaking, [the dissociation occurs] before the expiration of the term or the completion of the undertaking." Kan. Stat. Ann. 56a-602(b). Defendants argue that neither of these provisions is applicable in the instant case, as the partnership agreement included no definite terms regarding dissociation and an agreement to pursue a residential development is by its nature too speculative and uncertain to constitute an agreement for a definite term or particular undertaking.

We hold that the district court did not abuse its discretion in denying Defendants' motion for a new trial as to this issue. The jury was presented with sufficient evidence to support a finding that the joint venture agreement was one for a particular undertaking and that Defendants dissociated from the joint venture before this undertaking was completed. The jury heard evidence that the parties agreed to develop a single residential development project on a particular piece of property and intended to sell this project within a conceivable time frame after completion. The fact the parties had not fully determined feasibility or finalized all details of the project does not mean, as Defendants argue, that they necessarily could not have formed a joint venture to pursue this particular development project. Nor do the authorities cited by Defendants—mostly relating to agreements involving the continued management and operation of projects after development—persuade us that the agreement in this case was not one for a

particular undertaking. *Compare Miami Subs Corp. v. Murray Family Trust*, 703 A.2d 1366, 1371 (N.H. 1997) (holding that a joint venture to develop, finance, and operate an unknown number of restaurant franchises was not one for a particular undertaking), *with Fischer v. Fischer*, 197 S.W.3d 98, 105-06 (Ky. 2006) (concluding that a partnership to buy, lease, and sell a designated tract of land was an agreement for a particular undertaking even though the parties had not agreed upon an exact date for accomplishment of the undertaking). We conclude the jury could reasonably have found this to be a joint venture for a particular undertaking, which had not been completed prior to Defendants' dissociation. We thus affirm the entry of judgment in favor of Plaintiffs on their wrongful dissociation claim.

Defendants also contend they did not breach any fiduciary duties to Plaintiffs because they did not breach any of the limited fiduciary duties that remain following lawful dissociation from a joint venture. Because we uphold the jury's finding that the dissociation was wrongful, we likewise reject this argument and affirm the jury's finding of breach of fiduciary duty. *See Goben*, 676 P.2d at 97 (affirming a finding of breach of fiduciary duty where one party to a joint venture wrongfully ousted his partner and refused to account for joint venture profits and assets).

## VI. Damages

Defendants also appeal the award of damages. As previously stated, we

-15-

remand for further proceedings those damages awarded to all three Plaintiffs for lost contracting profits and unreimbursed expenses. We now consider Defendants' challenge to the approximately $7 million awarded to Mr. Meyer and Mr. Pratt for their interest in connection to the joint venture. Defendants contend this amount was necessarily speculative and contingent because the joint venture was terminated before the parties had acquired the land or determined whether the development project should even go forward. Because Defendants first raised this argument in their post-judgment motion for judgment as a matter of law, we review "only to determine if there is *any* evidence to support the damage award." *United Int'l Holdings v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1229 (10th Cir. 2000).

Applying this standard, we affirm this award of damages to Mr. Meyer and Mr. Pratt. The jury heard expert testimony regarding the value of the property and regarding the costs and profits involved in the completed development project. The jury also heard expert testimony that the project as completed generally followed the same broad ideas contemplated by the parties prior to Defendants' wrongful dissociation. We are not persuaded by Defendants' argument that Mr. Meyer and Mr. Pratt should be prevented from recovering damages because Defendants wrongfully dissociated from the venture and conspired to take this development opportunity from them before the parties could calculate with reasonable certainty what the project's potential costs and revenues

would be.  *Cf. Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1239-40 (10th Cir. 1990) ("'The wrongdoer may not complain of inexactness where his actions preclude precise computation to the extent of the injury.'" (quoting *Kestenbaum v. Falstaff Brewing Corp.*, 514 F.2d 690, 698 (5th Cir. 1975))).  The fact that Mr. Meyer and Mr. Pratt could lose profits if they were ousted from the project was reasonably within the contemplation of the parties at the time of Defendants' wrongdoing, and the amount of profits was proven with reasonable certainty at trial.  Kansas law does not require more.  *See Vickers v. Wichita State Univ.*, 518 P.2d 512, 515 (Kan. 1974).

## VII.  Unjust Enrichment

We turn next to the jury's finding of unjust enrichment.  After considering all of the evidence introduced at trial, we agree with the district court that there was sufficient evidence to support this finding.  We are not persuaded by Defendants' argument that Plaintiffs' unjust enrichment claim cannot stand because Plaintiffs rejected Defendants' offer to reimburse their out-of-pocket expenses.  The unpublished appellate case of *Holtof v. Singh*, 204 P.3d 1191 (Kan. Ct. App. 2009), cited by Defendants, does not require such a result, and we see no basis under Kansas law for concluding that the rejection of a settlement offer will defeat an unjust enrichment claim as a matter of law.

We also see no error in the district court's rejection of The Bluffs, LLC's argument that it cannot be liable for unjust enrichment because it did not come

into existence until after Plaintiffs had stopped conferring benefits upon any Defendants. Even if Plaintiffs did not confer these benefits directly on The Bluffs, the jury heard evidence that Plaintiffs conferred benefits on the individual owners of The Bluffs, who created The Bluffs the day after they terminated their relationship with Plaintiffs so they would have a corporate entity to which they could transfer these benefits. Under these circumstances, we see no error in the district court's entry of judgment on the jury's finding that The Bluffs was unjustly enriched. *Cf. Security Benefit Life Ins. Corp. v. Fleming Cos., Inc.*, 908 P.2d 1315, 1323 (Kan. Ct. App. 1995) (holding that an equipment installer had a valid unjust enrichment claim against a corporation that took over a grocery store on the date the installation was completed because the corporation knew the equipment remained on the premises and had not been paid for).

However, on remand, Mr. Meyer and Mr. Pratt may not receive an award for unjust enrichment unless they elect not to recover damages on their legal claims. *See Griffith v. Stout Remodeling, Inc.*, 548 P.2d 1238, 1242 (Kan. 1976) (explaining that the doctrine of election of remedies is applicable when two remedies are factually and logically inconsistent); *Member Servs. Life Ins. Co. v. Am. Nat'l Ban, & Trust Co.*, 130 F.3d 950, 957 (10th Cir. 1997) (explaining the hornbook rule that the quasi-contractual remedy of unjust enrichment is not available if there is an enforceable express agreement). As for whether Dovetail may recover on its unjust enrichment claim if Mr. Meyer and Mr. Pratt still elect

-18-

to recover legal damages, this issue has not been briefed by the parties or considered by the district court. We therefore remand this issue for the district court to consider in the first instance, along with any other related issues that may arise on remand.

## CONCLUSION

We **REVERSE** the entry of judgment against The Bluffs, LLC, on Plaintiffs' civil conspiracy claim. Mr. Meyer and Mr. Pratt's claims against Defendants are otherwise **AFFIRMED**. We **REVERSE** the entry of judgment in favor of Dovetail on the civil conspiracy claim. We **REVERSE** and **REMAND** the award of damages to the extent it includes $1,907,372 in lost contracting profits and $118,370 in unreimbursed expenses awarded to all three Plaintiffs. We also **REVERSE** the award of damages against The Bluffs, LLC. The award of damages in favor of Mr. Meyer and Mr. Pratt is otherwise **AFFIRMED**. On remand, Mr. Meyer and Mr. Pratt may seek their own lost contracting profits and unreimbursed expenses, if any, from the remaining Defendants. Dovetail's unjust enrichment claim against all Defendants is **REMANDED** for further consideration in light of this decision.